**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DORENA COLEMAN, CURTIS JACKSON, and FEDERICO PEREZ, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | No. 1:20-CV-00847-RP |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CECILE ERWIN YOUNG, Executive Commissioner, VICTORIA FORD, Chief Policy and Regulatory Officer, MAURICE MCCREARY, Chief Operating Officer, and MICHELLE ALLETTO, Chief Program and Services Officer, in their official capacities with the Texas Health and Human Services Commission, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**JOINT MOTION FOR APPROVAL OF CLASS NOTICE,
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT,
AND CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE MOTION ...................................................................1

II.   FACTS ....................................................................................................1

III.  OVERVIEW OF THE SETTLEMENT AGREEMENT ...............................3

    A.    HHSC Will Not Restrict Access to Medicaid Coverage Based on Fibrosis Score. ...............................................................................................3

    B.    Notice to the Medicaid HCV Class.......................................................4

    C.    Public Documentation and Provider Education......................................5

    D.    Release of Claims. .............................................................................6

    E.    Attorney Fees And Costs. ...................................................................6

IV.   LAW AND ARGUMENT .........................................................................6

    A.    Legal Standards for the Approval of a Class Action Settlement Agreement. ........................................................................................6

    B.    The Court Should Preliminarily Approve the Parties' Settlement Agreement. ........................................................................................8

        1.    No Fraud or Collusion is Present. ................................................8

        2.    The Complexity, Expense, and Likely Duration of Litigation Favor Settlement. .................................................................................9

        3.    The Stage of Proceedings and Amount of Discovery Completed Favor Settlement. .......................................................................10

        4.    The Probability of Success on the Merits Favors Settlement. ........10

        5.    The Range of Possible Recovery Favors Settlement. ...................11

        6.    The Parties and Their Respective Counsel Believe That the Settlement is Fair, Reasonable and Adequate............................12

            i.    The Settlement Agreement Provides for the Requested Prospective Relief. ........................................................12

            ii.   Counsel for the Putative Class are Experienced in Similar Litigation and Recommend Settlement.........................13

i

iii. The Proposed Notice, Opportunity to Submit Objections and Fairness Hearing are Sufficient to Safeguard the Interests of Class Members. ...........................................................13

C. Certification of the Proposed Settlement Class is Appropriate. ...........................14

 1. Ascertainability ................................................................................14

 2. Numerosity .......................................................................................15

 3. Commonality.....................................................................................17

 4. Typicality ..........................................................................................18

 5. Adequacy ..........................................................................................19

D. Rule 23(b)(2) Requirements. ..............................................................................22

E. Appointment of Class Counsel. ..........................................................................23

F. The Court Should Set A Final Approval Hearing.................................................24

G. Proposed Scheduling Order. ...............................................................................24

V. CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*7547 Partners v. Fistek*,
    114 F.3d 1183 (5th Cir. 1997) ......................................................................................7

*Ala. Nursing Home Ass'n v. Harris*,
    617 F.2d 385 (5th Cir. 1980) .......................................................................................23

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ......................................................................................23

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ......................................................................................10

*B.E. v. Teeter*,
    No. C16-227, 2016 WL 3033500 (W.D. Wash. May 27, 2016) ..................................21

*Berger v. Compaq Comput. Corp.*,
    257 F.3d 475 (5th Cir. 2001) ......................................................................................20

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
    624 F.3d 185 (5th Cir. 2010) ......................................................................................22

*Cole v. Livingston*,
    No. 4:14-CV-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016),
    *aff'd by Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ..........................................21

*Conrad v. Gen. Motors Acceptance Corp. (GMAC)*,
    283 F.R.D. 326 (N.D. Tex. 2012) ...............................................................................14

*Corley v. Entergy Corp.*,
    222 F.R.D. 316 (E.D. Tex. 2004), *aff'd sub nom.*,
    *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350 (5th Cir. 2005)............22

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ......................................................................................7

*DeBremaecker v. Short*,
    433 F.2d 733 (5th Cir. 1970) ......................................................................................14

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................7

*DeOtte v. Azar*,
    332 F.R.D. 188 (N.D. Tex. 2019) ..........................................................................14

*Duncan v. JPMorgan Chase Bank, N.A.*,
    No. SA-14-CA-00912-FB, 2015 WL 11623393 (W.D. Tex. Oct. 21, 2015) ......................7, 8

*Frey v. First Nat'l Bank Sw.*,
    602 F. App'x 164 (5th Cir. 2015) ........................................................................17

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982), *aff'd sub nom.*,
    *Falcon v. Gen. Tel. Co.*, 815 F.2d 317 (5th Cir. 1987)..........................................18

*Haley v. Merial, Ltd.*,
    292 F.R.D. 339 (N.D. Miss. 2013)..................................................................20, 22

*Hamilton v. First Am. Title Ins. Co.*,
    266 F.R.D. 153 (N.D. Tex. 2010), *vacated on other grounds*,
    423 F. App'x 425 (5th Cir. 2011) ..................................................................19, 21

*Ingram Corp. v. J. Ray McDermott & Co., Inc.*,
    698 F.2d 1295 (5th Cir. 1983) ..............................................................................6

*In re Asbestos Litig.*,
    90 F.3d 963 (5th Cir. 1996) ................................................................................18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020) ......................................................................8

*In re Granada P'ship Sec. Litigs.*,
    803 F. Supp. 1236 (S.D. Tex. 1992) .......................................................................7

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.,*
    *on Apr. 20, 2010,*
    295 F.R.D. 112 (E.D. La. 2013)..............................................................................8

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993)..............................................................................8

*In re Train Derailment Near Amite, La.*,
    MDL 1531, 2006 WL 1561470 (E.D. La. May 24, 2006).............................................8

*Jenkins v. Raymark Indus., Inc.*,
    782 F.2d 468 (5th Cir. 1986) ..............................................................................17

*Johnson v. Ga. Highway Express, Inc.*,
    417 F.2d 1122 (5th Cir. 1969) ..............................................................................19

*Jones v. Singing River Health Sys.*,
    No. 1:14CV447, 2016 WL 6106518 (S.D. Miss. Jan. 20, 2016)................................7

*Kelley v. Mid–America Racing Stables, Inc.*,
    139 F.R.D. 405 (W.D. Okla. 1990)....................................................................20

*Ledet v. Fischer*,
    548 F. Supp. 775 (M.D. La. 1982)................................................15, 16, 18

*Lightbourn v. Cnty. of El Paso, Tex.*,
    118 F.3d 421 (5th Cir. 1997) ...............................................................18

*M.D. ex rel. Stukenberg v. Perry*,
    294 F.R.D. 7 (S.D. Tex. 2013)................................................................17

*Maldonado v. Ochsner Clinic Found.*,
    493 F.3d 521 (5th Cir. 2007) ...............................................................22

*McGuire v. Int'l Paper Co.*,
    No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994) ...................15

*Mitchell v. State Farm Fire & Cas. Co.*,
    327 F.R.D. 552 (N.D. Miss. 2018), *aff'd*,
    954 F.3d 700 (5th Cir. 2020) ...............................................................14

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ...........................................................15, 16

*N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*,
    593 F.2d 642 (5th Cir. 1979) ...............................................................19

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ......................................................6, 8, 10

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) ...............................................................7

*Quintanilla v. A & R Demolition Inc.*,
    No. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008).................................7

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...............................................................8

*Regmund v. Talisman Energy USA, Inc.*,
    No. 4:16-CV-02960, 2019 WL 2863926 (S.D. Tex. July 2, 2019) .........................19

*Republic Nat'l Bank of Dall., Tr. v. Denton & Anderson Co.*,
    68 F.R.D. 208 (N.D. Tex. 1975) ...........................................................15

*Rubenstein v. Collins*,
   162 F.R.D. 534 (S.D. Tex. 1995) ............................................................................21

*Ryan v. Birch*,
   No. 17-cv-00904, 2017 WL 3896440 (D. Colo. Sept. 5, 2017) ................................21

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) ...................................................................................19

*Smith v. Crystian*,
   91 F. App'x 952 (5th Cir. 2004) ...............................................................................10

*Steward ex rel. Minor v. Janek*,
   315 F.R.D. 472 (W.D. Tex. 2016) ..................................................................18, 19, 20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ......................................................................................8

*Vuyanich v. Republic Nat'l Bank of Dall.*,
   505 F. Supp. 224 (N.D. Tex. 1980) ...........................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................................7, 17, 18, 22

*Zeidman v. J. Ray McDermott & Co., Inc.*,
   651 F.2d 1030 (5th Cir. 1981) ..................................................................................15

## STATUTES

42 U.S.C.
   § 1396a(a)(8) ............................................................................................................18
   § 1396a(a)(10)(A) ...................................................................................................2, 4
   § 1396d(a)(xvii)(12) ...................................................................................................4

## RULES

FED. R. CIV. P.
   23 .................................................................................................................... *passim*
   23(a)(1) ....................................................................................................................15
   23(a)(2) ...............................................................................................................17, 18
   23(a)(3) ....................................................................................................................18
   23(a)(4) ....................................................................................................................19
   23(b)(2) .......................................................................................................7, 22, 23
   23(c)(2) ......................................................................................................................4
   23(e) ......................................................................................................................1, 7
   23(e)(4) ......................................................................................................................7
   23(g) ........................................................................................................................23
   65(d)(1)(A)–(C) ........................................................................................................22

**TREATISES**

1 NEWBERG ON CLASS ACTIONS § 3.05 (3d ed. 1992) ....................................................16

7A Wright, Miller & Kane, FED. PRAC. & PROC. § 1760 (2d ed. 1986) ........................................15

**CONSTITUTIONAL PROVISIONS**

TEX. CONST., art. III, § 24(b) ..........................................................................................3

## I.    SUMMARY OF THE MOTION

The Parties jointly move this Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order preliminarily approving a settlement reached in this action, approving class notice, and conditionally certifying a Rule 23 Settlement Class.

The Court should preliminarily approve the parties' settlement.  The proposed Settlement Agreement provides the prospective relief sought in the Complaint—Medicaid coverage for treatment of Medicaid enrollees with Hepatitis C by a date certain.  Specifically, the Parties hereby move the Court to:

    (a)   approve the content of the proposed Class Notice;

    (b)   deem the proposed manner in which Class Notice shall be provided to be reasonable;

    (c)   authorize the mailing of Class Notice;

    (d)   preliminarily approve the Settlement Agreement;

    (e)   conditionally certify a Settlement Class pursuant to Federal Rule of Civil Procedure 23; and

    (f)   establish a final settlement approval hearing and process.

## II.    FACTS

This case was filed on August 13, 2020, on behalf of Plaintiffs Dorena Coleman, Curtis Jackson, and Federico Perez (collectively, "Plaintiffs"), who are Texas Medicaid enrollees diagnosed with Hepatitis C Virus ("HCV").  Plaintiffs filed suit on behalf of themselves and on behalf of similarly situated individuals in Texas.  Plaintiffs' Complaint, which seeks prospective relief only, alleges that Defendants, the officers of the Texas Health and Human Services Commission ("HHSC"), which operates Texas Medicaid, illegally deny coverage of direct acting antiviral ("DAA") treatment for individuals based on a fibrosis score restriction in the Texas

Medicaid Prior Authorization Criteria and Policy for DAA treatment coverage.[1,2]    Plaintiffs specifically allege that Texas Medicaid violates the Medicaid statute by failing to provide medically necessary DAAs to some Medicaid enrollees but not to others, and by applying a disease severity restriction on medically necessary DAAs for beneficiaries with HCV but not on treatment for other comparable chronic conditions.    Defendants dispute that HHSC's policies violate the Social Security Act or any other applicable law.

On August 14, 2020, Plaintiffs filed a motion to certify a class, (the "Medicaid HCV Class"), composed of all individuals who:

> a.    are or will in the future be enrolled in the Texas Medicaid Program as categorically needy individuals, as defined by 42 U.S.C. § 1396a(a)(10)(A);
> b.    have been or will be diagnosed as having an infection of the Hepatitis C Virus;
> c.    have been or will be prescribed DAA treatment by a qualified prescriber; and
> d.    would be eligible for DAA treatment coverage but for the Prior Authorization Criteria and Policy's fibrosis score threshold.

See Mot. for Class Cert. at 19–20 (ECF No. 10) (footnote omitted); see also Pls.' Original Class Action Compl. ¶ 135 (ECF No. 1).    The motion for class certification was supported by affidavits of retained expert witnesses, medical records, and the public-facing HHSC policy.[3]

---

[1] Ex. 1, TEX. HEALTH & HUMAN SERVS., *Texas Vendor Drug Program: Antiviral Agents for Hepatitis C Virus Initial Authorization Request (Medicaid), Form 1335* (Mar. 2018-E) ("Tex. Vendor Drug Program HCV Medicaid Authorization Form"), *available at* https://hhs.texas.gov/sites/default/files/documents/laws-regulations/forms/1335/1335.pdf    (last visited Feb. 10, 2021) *(previously filed as ECF No. 10-15)*.

[2] All exhibits referenced herein as Exhibits A & B and 1 through 12 are attached to the Appendix of Exhibits filed concurrently herewith in support of this motion.

[3] *See* Ex. 2, Decl. of Dr. Stacey Trooskin (July 24, 2020) *(previously filed as ECF No. 10-2)*, Ex. 3, Decl. of Dr. Benjamin Linas (July 24, 2020) *(previously filed as ECF No. 10-3)*, Pl. Dorena Coleman's medical records (various dates) (attached as Exhibit B to the Declaration of Jeffrey S. Edwards in Supp. of Joint Mot. for Approval of Class Notice, Prelim. Approval of Settlement Agreement, and Conditional Certification of the Rule 23 Settlement Class ("Edwards Decl."), Appendix of Exhibits, Ex. 4) *(previously filed as ECF No. 10-7)*, Pl. Curtis Jackson's medical records (various dates) (attached as Exhibit D to the Edwards Decl., Appendix of Exhibits, Ex. 4) *(previously filed as ECF No. 10-9)*, Pl. Federico Perez's medical records (various dates) (attached

On September 28, 2020, Defendants filed a Motion to Dismiss, *see* ECF No. 19, to which Plaintiffs filed an opposition on October 27, 2020, *see* ECF No. 24. On October 13, 2020, Plaintiffs served Defendants with their First Set of Requests for Production of Documents, to which Defendants produced thousands of pages of responsive documents on November 19, 2020, November 24, 2020, December 14, 2020, and December 15, 2020. On December 1, 2020, the Parties conducted a mediation with Patrick Keel, and on December 17, 2020, the Parties reached an agreement in principle and filed a Joint Motion for Entry of Order, *see* ECF No. 35, which the Court granted on January 4, 2021, *see* ECF No. 40.

## III.    OVERVIEW OF THE SETTLEMENT AGREEMENT

### A.    HHSC WILL NOT RESTRICT ACCESS TO MEDICAID COVERAGE BASED ON FIBROSIS SCORE.

Pending legislative approval of its budget request and approval of the settlement agreement in this matter, HHSC has agreed that, for a period of two years, beginning September 1, 2021, HHSC's Prior Authorization Criteria and Policy for DAA treatment will not restrict access to DAA treatments based on a Medicaid recipient's Metavir Fibrosis Score.[4] HHSC has further agreed that, during the same period, HHSC's Prior Authorization Criteria and Policy for DAA treatment will not restrict access to DAA treatments based on requirements that a recipient meet criteria regarding specialist approval or a specific period of abstinence from drugs or alcohol. The parties anticipate they should be certain of the results of the Texas Legislature's budget process by June 30, 2021;[5] if these changes are approved, they would become effective September 1, 2021.

---

as Exhibit F to the Edwards Decl., Appendix of Exhibits, Ex. 4) *(previously filed as ECF Nos. 10-11, 10-12)*, Ex. 1 (Tex. Vendor Drug Program HCV Medicaid Authorization Form).

[4] The Metavir Fibrosis Score is a measure of liver damage, typically determined by using an ultrasound.

[5] The Texas regular legislative session ends May 31, 2021. TEX. CONST., art. III, § 24(b) ("No Regular Session shall be of longer duration than one hundred and forty (140) days."). For example,

In the event medical standards and guidance regarding Metavir Fibrosis Score were to change, or in the event that federal or state Medicaid law relevant to the claims in this case were to change, the Parties have agreed that HHSC may revise its Prior Authorization Criteria and Policy for DAA treatment consistent with such changes.  If such revisions are made within the two-year term described above, then HHSC must provide counsel for the putative class with advance written notice 30 days before the changes are to take effect.  In addition, nothing in the Settlement Agreement prohibits HHSC from implementing immediate changes as necessary to conform to safety guidance issued by the federal Food and Drug Administration, and if Texas Medicaid optional pharmacy benefits[6] are eliminated, HHSC will have no obligation to continue providing DAAs, or any other pharmacy benefit.

## B.    NOTICE TO THE MEDICAID HCV CLASS.

The Court has the authority to order class notice in a class settlement under Federal Rule of Civil Procedure 23(c)(2), and the Parties have agreed that notice is appropriate in this particular case.  An important part of the relief for absent class members is to be notified of the changes to the Prior Authorization Criteria and Policy so that they may seek treatment.  In the Settlement Agreement, HHSC agrees to distribute notices to all individuals currently enrolled in Texas Medicaid who have been diagnosed with Hepatitis C and who have not previously received DAA treatment ("Class Notice").  Ex. A, Settlement Agreement and Release of All Claims ("Settlement Agreement"), at 7 § 10 (Mar. 3, 2021); Ex. B, Proposed Class Notice (Feb. 17, 2021).  The Proposed Class Notice advises class members in this group of the current coverage policy and,

---

in each of the last three biennia, the Governor signed the appropriations bill into law between June 12 and June 20.

[6] As authorized pursuant to 42 U.S.C. § 1396a(a)(10)(A) and 42 U.S.C. § 1396d(a)(xvii)(12).

assuming the individual still qualifies for Medicaid and their physician prescribes treatment with DAAs, that they may be approved for treatment. Ex. B, Proposed Class Notice.

Due to the relationship between the policy change contemplated by the Settlement Agreement and the legislative process, the parties propose Class Notice to be sent in August 2021, as described *infra.*

HHSC will also work in partnership with the Department of State Health Services ("DSHS") to leverage their contacts with community partners to share information about the updated HCV coverage criteria, and will utilize public postings in regional HHSC eligibility offices and on the HHSC agency website to notify Medicaid clients of the availability of DAA treatment for HCV.

Counsel for the putative class will also create a webpage at the address www.texasmedicaidhepc.com, or at a location substantially similar, that includes information about this action, the Medicaid HCV Class, and the proposed settlement, including how to contact counsel for the putative class. Ex. A, Settlement Agreement § 11.

## C.    PUBLIC DOCUMENTATION AND PROVIDER EDUCATION.

Every three months, from September 1, 2021 to August 31, 2023, HHSC will provide Plaintiffs' counsel with a copy of or link to HHSC's Provider Bulletins and Provider Association Notices, Hepatitis C Prior Authorization Request Form revisions, and copies of emails sent out by DSHS to their community partners, to the extent such documents address HHSC's policies and practices for the coverage of treatment of Hepatitis C Virus with DAAs.

HHSC will publish information for providers in the Provider Bulletin about the updated HCV coverage criteria. The Office of the Medical Director will conduct outreach by sending out notices regarding the updated HCV coverage criteria to the Managed Care Organization ("MCO") medical director contacts as well as key provider associations such as the Texas Medical

Association, Texas Pediatric Society, Texas Academy of Family Physicians, Texas Association of Community Health Centers, and the Texas Infectious Disease Society.  In turn, those provider associations will be requested to push out that information to their networks and memberships.  A prior authorization request form will also be published containing the revised criteria and policy. HHSC will also work in partnership with DSHS to leverage their contacts with community partners to share information about the updated HCV coverage criteria.

**D.    RELEASE OF CLAIMS.**

In return for the benefits under the Settlement Agreement, the named Plaintiffs and the Medicaid HCV Class will release all claims for injunctive and declaratory relief relating to HHSC's previous denial of coverage for DAAs based on fibrosis score.  Ex. A, Settlement Agreement § 15.  The release does not include a release of individual claims for money damages as to class members.  *Id.*  The release also confirms that Defendants and HHSC retain any immunities available under law to such claims.  *Id.*

**E.    ATTORNEY FEES AND COSTS.**

HHSC will pay Plaintiffs' counsel's reasonable attorneys' fees and costs, as approved by the Court after a fairness hearing.  Ex. A, Settlement Agreement § 21.  The Parties have agreed that Plaintiffs will seek, and HHSC will not oppose, attorneys' fees and costs in the amount of $500,000.00. Plaintiffs will make a separate motion for approval of attorneys' fees in connection with final approval of the Settlement Agreement.

## IV.    LAW AND ARGUMENT

**A.    LEGAL STANDARDS FOR THE APPROVAL OF A CLASS ACTION SETTLEMENT AGREEMENT.**

Policy reasons generally encourage voluntary settlements of disputes.  *See, e.g.*, *Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295, 1306 (5th Cir. 1983); *Parker v. Anderson*,

667 F.2d 1204, 1209 (5th Cir. 1982); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399, at *2 (S.D. Tex. May 7, 2008); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 311 (W.D. Tex. 2007); *In re Granada P'ship Sec. Litigs.*, 803 F. Supp. 1236, 1240 (S.D. Tex. 1992).   Pursuant to Federal Rule of Civil Procedure 23(e), settlement of the claims of a certified class requires Court approval.  *Piambino v. Bailey*, 610 F.2d 1306, 1327–28 (5th Cir. 1980).   In approving a settlement agreement, "the court cannot modify the terms of the proposed settlement; rather, the Court must approve or disapprove of the proposed settlement as a whole."  *DeHoyos*, 240 F.R.D. at 286 (internal quotation marks and citation omitted).   Because the Parties seek certification of the Medicaid HCV Class under Rule 23(b)(2), the settlement approval criteria set forth in Rule 23(e) is different from a typical damages class action process.   For example, Rule 23(e)(4), requiring the court to provide an opportunity to opt-out, does not apply.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *7547 Partners v. Fistek*, 114 F.3d 1183, at *7 (5th Cir. 1997) ("A significant effect of certifying an action pursuant to 23(b) (1) and (b)(2) and not (b)(3) is that class members have no opt out rights.") (citation omitted).   The remaining elements of Rule 23(e) guide the Court's approval of the proposed settlement.

There are two steps for judicial review of a proposed class settlement:  a preliminary approval review and final fairness hearing.  *See, e.g.*, *Jones v. Singing River Health Sys.*, No. 1:14CV447, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016).   "At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'"  *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2015 WL 11623393, at *3 (W.D. Tex. Oct. 21, 2015) (citations omitted).   As such, the proposed settlement

should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (internal quotation marks and citation omitted); *Duncan*, 2015 WL 11623393, at *3.

If the Court preliminarily approves the Settlement Agreement, notice of the settlement and the fairness hearing are sent to the class members. During the fairness hearing, the Court determines if the Settlement Agreement should be approved. The Court should approve "fair, adequate, and reasonable" settlements. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (citation omitted). The following factors are considered in determining whether a class action settlement is "fair, reasonable, and adequate":

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the class counsel, class representatives, and absent class members.

*Id.* at 639 n.11; *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker*, 667 F.2d at 1209.

## B.    THE COURT SHOULD PRELIMINARILY APPROVE THE PARTIES' SETTLEMENT AGREEMENT.

### 1.    No Fraud or Collusion is Present.

A settlement is fairly and honestly negotiated when negotiations occur between experienced counsel, negotiations are made at arm's length, and significant discovery occurred. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 490 (E.D. La. 2020); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010*, 295 F.R.D. 112, 146 (E.D. La. 2013); *In re Train Derailment Near Amite, La.*, MDL 1531,

2006 WL 1561470, at *19 (E.D. La. May 24, 2006) ("that a class action settlement is reached after arms' length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate") (citations omitted).  All of these criteria are satisfied here.

The Parties vigorously advocated for and pursued their respective positions throughout the case and in settlement negotiations.  Each side dedicated substantial resources to this case.  The Parties expended hundreds of attorney and staff hours, engaged in motion practice, scheduled, served and began the process of discovery, undertook significant legal analysis, and engaged in significant case conference and negotiation efforts.  As such, each side contributed considerable resources to advancing their clients' positions.  The outcome of the Settlement Agreement achieves the Plaintiffs' goal in initiating this litigation.  There has been no collusion between the Parties.

**2.    The Complexity, Expense, and Likely Duration of Litigation Favor Settlement.**

This is a complex case that involves voluminous data and numerous complicated legal issues.  Without the Settlement, Plaintiffs would face substantial hurdles litigating these complex claims through the pending motion to dismiss, through the class certification process and future summary judgment and trial proceedings.  Due to the disputed facts and legal conclusions in this case, which relate primarily to medical issues such as the medical standard of care for treatment of HCV and other chronic illnesses, policy issues relating to the structure of HHSC's current framework, and statistics relating to HHSC's handling of HCV, this litigation will likely be complex, expensive, and time consuming.  Plaintiffs understand that Defendants would continue to contest this Action vigorously, which has the potential to continue for years at substantial cost to the Parties.  Defendants' motion to dismiss raises a battery of complex legal arguments that required considerable briefing and may be raised again at later stages of this case.  Without the

Settlement, the Parties also would spend considerable time, resources, and money to continue litigating the case to its end.

Counsel for the putative class agreed to the proposed Settlement after carefully considering the risks, complexity and delay of continuing to litigate, and after extensive negotiations that fully explored the complex claims in the case.  "[S]ettling now avoids the risks and burdens of potentially protracted litigation."  *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (citation omitted).

### 3. The Stage of Proceedings and Amount of Discovery Completed Favor Settlement.

At this stage of the litigation, the Parties have engaged in some discovery on the relevant issues, which has allowed counsel for the putative class to better understand the merits of this Action.  On October 12, 2020, counsel for the putative class provided Defendants with the relevant medical records of the named Plaintiffs.  On November 19, 2020, November 24, 2020, December 14, 2020, and December 15, 2020, Defendants produced several hundred documents in response to Plaintiffs' First Set of Requests for Production of Documents.  The Parties were prepared to proceed with depositions at the time the settlement was reached.  The discovery exchanged in this case has enabled the Parties to engage in vigorous, arms-length negotiations before arriving at the proposed Settlement.

### 4. The Probability of Success on the Merits Favors Settlement.

"Absent a showing of fraud or collusion, 'the most important factor is the probability of the plaintiffs' success on the merits.'"  *Smith v. Crystian*, 91 F. App'x 952, 955 n.3 (5th Cir. 2004) (quoting *Parker*, 667 F.2d at 1209).  The Fifth Circuit has observed that settlement is an appropriate outcome where the likelihood of success is difficult to assess and the plaintiffs face substantial challenges.  *Parker*, 667 F.2d at 1209–10.

The Settlement Agreement represents a compromise balancing the merits of Plaintiffs' claims with the considerable difficulties of proving the claims. While Plaintiffs believe they could succeed on their claims at trial, there were real risks to Plaintiffs and the putative class if they proceeded to litigate the claims. Defendants have filed a motion to dismiss in this matter, and have indicated that they dispute Plaintiffs' central factual allegations regarding standard of care for treatment of HCV and other chronic illnesses, as well as legal conclusions such as whether HHSC's prior coverage criteria for DAAs violated the Medicaid Act. Under the circumstances, Plaintiffs determined that the Settlement outweighs the risks of continued litigation and is a reasonable way to eliminate those risks. This Settlement Agreement provides for Class Notice to the Medicaid HCV Class, informing individuals that their fibrosis score is no longer a factor to receiving approval to treat their HCV infection with DAAs—the relief sought in the Complaint. Based on this alone, the value of this immediate outcome far outweighs the value of future relief. Additionally, by resolving this case now, the Parties are also receiving the added benefit of foregoing the need to unnecessarily increase the resources allocated to this litigation, and providing the core benefit to the patient class members who will significantly benefit from immediate DAA treatment.

## 5.    The Range of Possible Recovery Favors Settlement.

Plaintiffs did not seek damages—only injunctive and other equitable relief. Even if Plaintiffs were to overcome the substantial risks of continued litigation and were successful in establishing liability, there were risks faced in obtaining equitable relief. Indeed, as stated above, Plaintiffs believe that they will obtain through the Settlement the precise outcome they would have sought to obtain through continued litigation. Thus, given the obstacles and uncertainties faced in this litigation and the relief sought versus the relief obtained via the Settlement, this factor strongly favors approving the settlement.

11

6.    **The Parties and Their Respective Counsel Believe That the Settlement is Fair, Reasonable and Adequate.**

           i.    *The Settlement Agreement Provides for the Requested Prospective Relief.*

The Settlement Agreement ensures that an individual's fibrosis score will not be considered as a factor when seeking coverage for DAAs.  Plaintiffs Dorena Coleman, Curtis Jackson, and Federico Perez will receive speedy approval of their renewed DAA treatment coverage requests. The Settlement Agreement also contemplates this Court retaining jurisdiction only for the purpose of enforcing the terms of the Settlement Agreement.  Ex. A, Settlement Agreement §§ 32–33. Either Party may contest the other Party's compliance with the Settlement Agreement by first raising the issue with the other party, and if those efforts are unsuccessful, filing a motion to reopen the action to seek enforcement of the Settlement Agreement terms on or before August 31, 2023. *Id.*

       The Settlement Agreement also provides payment of the Medicaid HCV Class attorneys' fees and costs.

       These outcomes were reached after arms-length negotiations, and they achieve the goal of this litigation.

       Additionally, the terms of the Settlement Agreement include broad Class Notice to the Medicaid HCV Class members of the change in the fibrosis score criterion for DAAs, which encourages members to consult with their doctors about the appropriateness of DAA treatment. The Class Notice will state that DAA coverage is only available to current Medicaid enrollees. Any previously denied Medicaid enrollee who remains interested in DAA treatment should consult with their provider about whether DAA treatment is still right for them.  Ex. A, Settlement Agreement § 10.

   ii. *Counsel for the Putative Class are Experienced in Similar Litigation and Recommend Settlement.*

Counsel for the putative class are very experienced in similar class action litigation and strongly recommend that the Court approve the Settlement Agreement. Ex. 4, Edwards Decl. ¶¶ 5, 11–19, 28–31, 37–38, 41–51; Ex. 5, Decl. of David C. Tolley in Supp. of Joint Mot. for Approval of Class Notice, Prelim. Approval of Settlement Agreement, and Conditional Certification of the Rule 23 Settlement Class ("Tolley Decl."), ¶¶ 4, 6, 7 (Feb. 12, 2021); Ex. 6, Decl. of Kevin Costello in Supp. of Joint Mot. for Approval of Class Notice, Prelim. Approval of Settlement Agreement, and Conditional Certification of the Rule 23 Settlement Class ("Costello Decl."), ¶¶ 4–6 (Feb. 12, 2021).

   iii. *The Proposed Notice, Opportunity to Submit Objections and Fairness Hearing are Sufficient to Safeguard the Interests of Class Members.*

The Court should approve the Proposed Notice and direct that it be mailed to Medicaid HCV Class members. *See* Ex. B, Proposed Class Notice. The Proposed Notice summarizes the Settlement Agreement, explains how class members can file objections, and informs class members where they can obtain more information. The Notice also includes the details for the date and time of the settlement approval hearing. The Notice is targeted to current Medicaid HCV Class members so that the information provided is relevant to their specific situation.

Class members may obtain more information about the Settlement Agreement from counsel for the putative class or HHSC. Class members will have an opportunity to ask questions about the settlement to Plaintiffs' counsel or consult with their own attorneys.

**C.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE.**

For purposes of this Settlement only, Defendants do not oppose class certification.[7]  The

Settlement Class is adequately defined and clearly ascertainable and certification is appropriate

under Rule 23(a) and (b)(2) as discussed below.  The Parties now propose to certify a class (the

"Medicaid HCV class") for settlement purposes that is comprised of all individuals:

1.  all individuals who are or will in the future be enrolled in the Texas Medicaid Program;

2.  who have been or will be diagnosed as having an infection of the Hepatitis C Virus;

3.  who have been or will be prescribed DAA treatment by a qualified prescriber; and,

4.  who have not already completed a course of DAA treatment and achieved sustained virologic response.

**1.    Ascertainability**

To maintain a class action, "the class sought to be represented must be adequately defined

and clearly ascertainable."  *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (collecting

authorities).  An identifiable class exists "'if its members can be ascertained by reference to

objective criteria.'"  *DeOtte v. Azar*, 332 F.R.D. 188, 195 (N.D. Tex. 2019) (quoting *Conrad v.*

*Gen. Motors Acceptance Corp. (GMAC)*, 283 F.R.D. 326, 328 (N.D. Tex. 2012)).  Every potential

member need not be readily identified.  *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552,

560 (N.D. Miss. 2018), *aff'd*, 954 F.3d 700 (5th Cir. 2020).  The key inquiry is whether "it is

---

[7] Defendants do not join in Sections C, D or E of this motion.  Instead, these portions of the motion may be treated as unopposed because, for the limited purposes of obtaining court approval of this Settlement Agreement, Defendants do not contest the approval of a class in this matter.  Should the Settlement Agreement fail to obtain legislative approval or should funding not be made available, or should the Court otherwise conclude that joint preliminary approval of the Settlement Agreement is improper, Defendants reserve the right to contest the appropriateness of a class in this matter.  *See* Agreement in Principle § 3 ("Defendants reserve the right to challenge the propriety of certification of a class in this matter in the event that the Legislature does not approve funding for HHSC's exceptional item.").

administratively feasible for the court to determine whether a particular individual is a member." *McGuire v. Int'l Paper Co.*, No. 1:92-CV-593BRR, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994) (quoting 7A Wright, Miller & Kane, FED. PRAC. & PROC. § 1760, at 121 (2d ed. 1986)).

The class proposed here is easily ascertainable. There are objective standards to determine membership of the proposed class. Records of enrollment in the Texas Medicaid Program are maintained by the Defendant and its contractors, which provide the basis for eligibility. Where a HCV infection has been diagnosed, the Defendant or its contractors will have claim and coverage records reflecting the diagnosis. Further, the business and medical records of the Defendants and its contractors will likewise reflect where a qualified prescriber has submitted a request for coverage.[8]

### 2.    Numerosity

Plaintiffs who seek class certification must demonstrate that "the class is so numerous that joinder of all members is impracticable[.]" FED. R. CIV. P. 23(a)(1). "The proper focus [of the numerosity requirement] is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (internal quotation marks and citations omitted). A number of factors are relevant to determining whether "it is difficult or inconvenient to join all members of the class[,]" *Ledet v. Fischer*, 548 F. Supp. 775, 781–82 (M.D. La. 1982) (citing *Republic Nat'l Bank of Dall., Tr. v. Denton & Anderson Co.*, 68 F.R.D. 208 (N.D. Tex. 1975)), including "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim[,]" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999) (citation omitted).

---

[8] *See* Ex. 1, Tex. Vendor Drug Program HCV Medicaid Authorization Form.

Plaintiffs' proposed class is sufficiently numerous.  As of 2018, over 500,000 Texans were estimated to be living with HCV.[9]  By September 2020, over 4.5 million individuals were enrolled in Medicaid and CHIP in Texas, a population that is by definition low-income and therefore disproportionately affected by HCV.[10]  Among the Medicaid enrollees living with HCV, about 70 percent have a fibrosis score of F0, F1, or F2.[11]  Thus, the proposed class likely consists of hundreds or thousands of individuals currently denied DAA treatment for HCV.  The size of the proposed class here is clearly sufficient to satisfy the numerosity requirement.  *See Mullen*, 186 F.3d at 624 (stating that "any class consisting of more than forty members 'should raise a presumption that joinder is impracticable'") (quoting 1 NEWBERG ON CLASS ACTIONS § 3.05, at 3-25 (3d ed. 1992)); *Ledet*, 548 F. Supp. at 781–82 (noting that plaintiffs seeking class certification need not show the "exact number of potential members").  As the settlement unfolds, the Parties

---

[9] Ex. 7, TEX. HEALTH & HUMAN SERVS., *2020 State Plan for Hepatitis C, As Required by Texas Health & Safety Code Section 94.001* at 4 (Aug. 2019), https://www.dshs.state.tx.us/legislative/2019-Reports/2020-State-Plan-for-Hepatitis-C.pdf (*also available via* https://dshs.texas.gov/legislative/Reports-2019.aspx).

[10] Ex. 8, CENTERS FOR MEDICARE & MEDICAID SERVICES, Medicaid & CHIP in Texas, https://www.medicaid.gov/state-overviews/stateprofile.html?state=Texas (last visited Feb. 10, 2021).  According to an HHSC report in 2017, less than 1 percent of the Texas full beneficiary caseload in 2015 comes from medically needy spend down programs.  Ex. 9, TEX. HHSC, TEXAS MEDICAID AND CHIP IN PERSPECTIVE 35 (11th ed. 2017), https://hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2017/medicaid-chip-perspective-11th-edition/11th-edition-complete.pdf; *see also* Ex. 10, Barbara J. Turner, et al., *High Priority for Hepatitis C Screening in Safety Net Hospitals: Results From a Prospective Cohort of 4582 Hospitalized Baby Boomers*, 62 HEPATOLOGY 1388, 1388 (2015), https://aasldpubs.onlinelibrary.wiley.com/doi/full/10.1002/hep.28018 ("Low-income populations are disproportionately affected by hepatitis C virus (HCV) infection.").

[11] Ex. 11, D.B. Rein, *The Cost-effectiveness, Health Benefits, and Financial Costs of New Antiviral Treatments for HCV*, 61 CLINICAL INFECTIOUS DISEASES 157, Table 2 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5759765/pdf/nihms929766.pdf; Ex. 12, MD. DEP'T OF HEALTH, *2017 Joint Chairmen's Report on Hepatitis C Treatment* 1, 5–6 (2018), https://mmcp.health.maryland.gov/Documents/JCRs/2017/hepcJCRfinal10-17.pdf.

will work with HHSC data and that of its contractors to more specifically identify members of the Medicaid HCV Class.

### 3. Commonality

Rule 23(a) also requires that "there are questions of law or fact common to the class[.]" FED. R. CIV. P. 23(a)(2). Plaintiffs must show that the class's claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do," *id.* at 359 (internal quotation marks and citation omitted), and the key determination is "whether there is a need for combined treatment and a benefit to be derived therefrom," *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (internal quotation marks and citation omitted). In general, a plaintiff seeking class certification "must identify a unified common policy, practice, or course of conduct that is the source of their alleged injury[,]" *M.D. ex rel. Stukenberg v. Perry*, 294 F.R.D. 7, 26 (S.D. Tex. 2013), that "provides a class-wide basis for deciding significant common issues of fact and law," *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 172 (5th Cir. 2015) (citation omitted).

Here, there are a range of legal and factual questions inherent in the central legal question presented by the Complaint that are common to all members of the class. Among these common questions are:

- What constitutes the standard of care for treatment of HCV;
- Whether withholding DAA treatment coverage to Medicaid enrollees with HCV violates such standard of care or medical necessity;
- Whether putative class members are similarly situated to other Medicaid enrollees with respect to medical need;
- Whether Texas Medicaid employs any other disease severity threshold for approval of a cure for any other similar chronic illness;

17

- Whether a denial of coverage until suffering a qualifying fibrosis score is permissible under the reasonable promptness provision of 42 U.S.C. § 1396a(a)(8); and
- Whether the Policy is in place for cost reasons, rather than medical reasons.

Because there are common factual and legal questions among all members of the proposed class, "maintenance of a class action is economical," and all Plaintiffs' claims "can productively be litigated at once." *Wal-Mart*, 564 U.S. at 349 & n.5. The proposed class here satisfies the commonality requirement under Rule 23(a)(2).

### 4. Typicality

The claims or defenses of proposed class representatives must be "typical of the claims or defenses of the class[.]" FED. R. CIV. P. 23(a)(3). To satisfy typicality, the class representatives must "possess the same interest and suffer the same injury" as the prospective class members. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citations omitted), *aff'd sub nom.*, *Falcon v. Gen. Tel. Co.*, 815 F.2d 317 (5th Cir. 1987). The requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (citing *In re Asbestos Litig.*, 90 F.3d 963, 976 (5th Cir. 1996)). The representatives' claims and those of all class members, however, "need not be completely co-extensive or identical." *Ledet*, 548 F. Supp. at 782 (citing *Vuyanich v. Republic Nat'l Bank of Dall.*, 505 F. Supp. 224 (N.D. Tex. 1980)). This Court has discretion to choose "the appropriate level of generality at which to compare Plaintiffs to members of the proposed class." *Steward ex rel. Minor v. Janek*, 315 F.R.D. 472, 489 (W.D. Tex. 2016).

Dorena Coleman, Curtis Jackson, and Federico Perez are typical of the class. They are (i) individuals who are enrolled in the Texas Medicaid Program; (ii) who have been diagnosed as having an infection of the Hepatitis C Virus; (iii) who have been prescribed DAA treatment by a

qualified prescriber; and (iv) who have not already completed a course of DAA treatment and achieved sustained virologic response.

### 5.    Adequacy

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  The adequacy inquiry can be broken up into three subcategories:  (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent."  *Regmund v. Talisman Energy USA, Inc.*, No. 4:16-CV-02960, 2019 WL 2863926, at *4 (S.D. Tex. July 2, 2019) (quoting *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017)).  With respect to the putative class representatives, it is sufficient that they "have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants."  *Steward*, 315 F.R.D. at 490–91 (citing *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 164 (N.D. Tex. 2010), ("*Hamilton I*"), *vacated on other grounds*, 423 F. App'x 425 (5th Cir. 2011)).  Additionally, the court must find that counsel for the putative class is "qualified, experienced, and generally able to conduct the proposed litigation[]" in order to certify a class.  *N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir. 1979) (footnote omitted) (citing *Johnson v. Ga. Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969)).

The putative class representatives have no interest that is now or may potentially be antagonistic to the interests of the class.  Their interests are wholly aligned with all individuals in the putative class; all challenge the legal validity of the Policy, and seek to gain coverage of DAA

treatment for their HCV by HHSC.  The claims of the class also do not require subclasses, neither presently nor in the future.

The proposed class representatives will fairly and adequately protect the interests of the class as a whole.  Dorena Coleman, Curtis Jackson, and Federico Perez are committed to and passionate about the case and fully understand their responsibilities as class representatives.  They stood ready to respond to discovery, appear for deposition, and travel to courts to testify for this case, and are actively participating in this settlement process.  *See Haley v. Merial, Ltd.*, 292 F.R.D. 339, 349 (N.D. Miss. 2013).  Their declarations clearly demonstrate that they understand their role in the litigation.  *See* Decl. of Dorena Coleman in Supp. of Mot. for Class Cert. ("Coleman Decl.") (July 29, 2020), ¶¶ 10–11 (attached as Exhibit A to the Edwards Decl., Appendix of Exhibits, Ex. 4) *(previously filed as ECF No. 10-6)*; Decl. of Curtis Jackson in Supp. of Mot. for Class Cert. ("Jackson Decl.") (Aug. 13, 2020), ¶¶ 10–11 (attached as Exhibit C to the Edwards Decl., Appendix of Exhibits, Ex. 4) *(previously filed as ECF No. 10-8)*; Decl. of Federico Perez in Supp. of Mot. for Class Cert. ("Perez Decl.") (Aug. 6, 2020), ¶¶ 10–11 (attached as Exhibit E to the Edwards Decl., Appendix of Exhibits, Ex. 4) *(previously filed as ECF No. 10-10)*.  *Cf. Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) (finding that the named plaintiffs did not adequately represented the class because they knew nothing "more than that they were 'involved in a bad business deal'") (footnote omitted) (quoting *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 410 (W.D. Okla. 1990)).  They have also specifically described the outcomes they wish to achieve and expressed their willingness to represent the class.  *See* Ex. 4, Edwards Decl. at Ex. A (Coleman Decl.), ¶¶ 10–12; *id.* at Ex. C (Jackson Decl.), ¶¶ 10–12; *id.* at Ex. E (Perez Decl.), ¶¶ 10–12; *see Steward*, 315 F.R.D. at 491.  All these elements demonstrate "a general understanding of their position as plaintiffs with respect to the cause of action and the

alleged wrongdoing perpetrated against" them by the Defendants. *Hamilton I*, 266 F.R.D. at 164 (internal quotation marks omitted) (quoting *Rubenstein v. Collins*, 162 F.R.D. 534, 538 (S.D. Tex. 1995)).

Plaintiffs are represented by highly competent attorneys with extensive experience in litigating class action cases in federal court.[12]  Each of the attorneys in this case has extensive experience with civil rights and healthcare-related litigation.  *See id.*  Specifically, among the proposed counsel are lawyers who have successfully certified classes of inmates who brought Eighth Amendment claims against state facilities, *see, e.g.*, *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *1 (S.D. Tex. June 14, 2016), *aff'd by Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017), as well as statewide classes of Medicaid beneficiaries seeking access to HCV treatment under the same standard of care at issue here, *see, e.g.*, *Ryan v. Birch*, No. 17-cv-00904, 2017 WL 3896440 (D. Colo. Sept. 5, 2017); *B.E. v. Teeter*, No. C16-227, 2016 WL 3033500 (W.D. Wash. May 27, 2016).  Moreover, counsel from the Edwards Law Group represent plaintiffs and a putative class of Texas inmates with chronic HCV in an action seeking the same relief here – injunctive relief ending a fibrosis threshold requirement and instead requiring DAA treatment for all Texas Department of Criminal Justice inmates with chronic HCV.  *See* Ex. 4, Edwards Decl. ¶ 16.  Each attorney proposed as class counsel has filed a declaration outlining their specific experience and qualifications.  *See* Ex. 4, Edwards Decl.; Ex. 5, Tolley Decl.; Ex. 6, Costello Decl. Because both the named Plaintiffs and Plaintiffs' counsel adequately represent the interests of the proposed class, the adequacy requirement of Rule 23(a) is satisfied.

---

[12] *See* Ex. 4, Edwards Decl. ¶¶ 5, 11–19, 28–31, 37–38, 41–51; Ex. 5, Tolley Decl. ¶¶ 4, 6, 7; Ex. 6, Costello Decl. ¶¶ 4–6.

D.    RULE 23(B)(2) REQUIREMENTS.

The Fifth Circuit has identified two requirements when a proposed class seeks classwide injunctive relief: (1) class members must have been harmed in essentially the same way, *i.e.*, that there was "common behavior by the defendant towards the class," *Haley*, 292 F.R.D. at 350 (quoting *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010)); and (2) the injunctive relief sought must be specific, *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007); *see also* FED. R. CIV. P. 65(d)(1)(A)–(C). In addition, "injunctive or declaratory relief must be the predominant form of relief." *Corley v. Entergy Corp.*, 222 F.R.D. 316, 322 (E.D. Tex. 2004) (citation omitted), *aff'd sub nom.*, *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350 (5th Cir. 2005). To satisfy this prong, plaintiffs generally need to show that there was "common behavior by the defendant towards the class." *Casa Orlando Apartments*, 624 F.3d at 198 (citing FED. R. CIV. P. 23(b)(2)).

All individuals in the putative class are subject to the Policy at issue here, such that "the [injunctive or declaratory] relief sought [would] perforce affect the entire class at once[.]" *Wal-Mart*, 564 U.S. at 361–62. Plaintiffs do not ask the Court to make individualized determinations of class members' medical need. Rather, Plaintiffs ask the Court to strike down Defendant's categorical policy or practice towards Medicaid enrollees with HCV that prevents coverage of DAA treatment for patients with fibrosis levels F0, F1, or F2 in contravention of the prevailing standard of care. In this way, the single injunction of Defendants' policy or practice that Plaintiffs are seeking "would provide relief to each member of the class[,]" who are systematically harmed by Defendants' current policy or practice. *Id.* at 360.

The injunctive relief sought by Plaintiffs is sufficiently specific. Plaintiffs ask this Court for a permanent injunction enjoining Defendants from denying treatment coverage for curative DAAs to those with a fibrosis score less than a specified minimum. This request is "specific in its

terms" and "describe[s] in reasonable detail the act or acts" that are to be enjoined. *Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980) (citation omitted). Moreover, Plaintiffs seek only injunctive and declaratory relief in this case, not monetary damages. *Cf. Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 418 (5th Cir. 1998) (denying Rule 23(b)(2) class certification because monetary relief predominated).

Therefore, class action is an appropriate vehicle for the type of claims raised here, and the proposed class satisfies Rule 23(b)(2).

## E.    APPOINTMENT OF CLASS COUNSEL.

Plaintiffs, on behalf of the putative class, seek the appointment of Jeff Edwards, Mike Singley, Scott Medlock, and David James of Edwards Law Group, Kevin Costello of the Center for Health Law & Policy Innovation of Harvard Law School, and David Tolley, Amanda Barnett, and Avery Borreliz of Latham & Watkins, LLP, as Class Counsel. In determining whether to appoint class counsel, the court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g).

The evidence in this case demonstrates that the attorneys proposed as Class Counsel would satisfy their duty to fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g). These attorneys possess more than 75 years of combined civil litigation experience, including class actions and complex litigation. *See* Ex. 4, Edwards Decl. ¶ 4; Ex. 5, Tolley Decl. ¶ 4, 7(a)(iii) & (b)(iii); Ex. 6, Costello Decl. ¶¶ 2–4.

F.    **THE COURT SHOULD SET A FINAL APPROVAL HEARING.**

Medicaid HCV Class members with comments, concerns, or objections to the Settlement Agreement should have an opportunity to submit written material for the Court's consideration. Class members wishing to appear in person to provide comments, concerns, or objections should also have the opportunity to appear at a hearing before the Court decides if it fully approves the Settlement Agreement.

Class members wishing to appear should notify the Court and the Parties and provide a statement of the issue(s) they wish to discuss.  The proposed Class Notice and proposed order submitted with this Motion require that such notice be given so that the Court and the Parties can consider and address the specific issues that the class members wish to discuss.

The Medicaid HCV Class requests that the Court set a hearing date as per the schedule proposed below to consider class members' comments, if any, and to decide if the Settlement Agreement should be finally approved and implemented.

G.    **PROPOSED SCHEDULING ORDER.**

The Parties propose that the Court issue a scheduling order along with its Order Approving of Class Notice, Preliminarily Approving of the Settlement Agreement, and Conditionally Certifying the Rule 23 Settlement Class ("Preliminary Approval Order") that includes deadlines for the following:

> (1)  Class Notice – on or before August 1, 2021,[13] HHSC shall mail the Class Notice to class members or send the notice through other effective means of communication, and class counsel shall set up the settlement website;

---

[13] The Parties are consulting with a range of Medicaid stakeholders to determine the appropriate timing of class notice.  Because the Texas budgetary biennium necessitates that the major changes at the heart of the settlement agreement become effective on September 1, 2021, the Parties want to ensure that notice is timed such that class members are not prompted to seek treatment before

(2)  Any Comments or Objections to Settlement Agreement – on or before October 15, 2021, class members must submit to the Court any written comments or objections to the Settlement Agreement or indicate a desire to appear at the fairness hearing;

(3)  Motion for Attorneys' Fees and Costs – Class Counsel shall file its Motion for Attorneys' Fees, and Costs within 30 days from the Class Member Comments/Objections deadline;

(4)  Motion for Final Approval of the Settlement Agreement – the Parties shall file a Motion for Final Approval of the Settlement Agreement within 30 days from the Class Member Comments/Objections deadline; and

(5)  Fairness Hearing – the Parties request that the Court set a Fairness Hearing to consider the Parties' Motion within 90 days from the filing of the Motion for Final Approval of the Settlement Agreement.

## V.    CONCLUSION

The Parties respectfully request that the Court:

(a)  approve the content of the proposed Class Notice;

(b)  deem the proposed manner in which Class Notice shall be provided to the Medicaid HCV Class to be reasonable;

(c)  authorize the mailing of Class Notice to the Medicaid HCV Class;

(d)  preliminarily approve the Settlement Agreement;

---

the changes become effective.  As such, the Parties anticipate that class notice should be effected sometime in August 2021.

(e)  conditionally certify a Settlement Class pursuant to Federal Rule of Civil
     Procedure 23; and

(f)  set a date for the final settlement approval hearing and establish a process for
     approval.

Respectfully submitted this 10th day of March, 2021.

LATHAM & WATKINS LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
Tel.  (617) 880-4610
Fax:  (617) 948-6001

By /s/ Amanda Barnett
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
SCOTT MEDLOCK
State Bar No. 24044783
scott@edwards-law.com
MICHAEL SINGLEY
State Bar No. 00794642
mike@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com
EDWARDS LAW
1101 East 11th Street
Austin, TX 78702
Tel.  (512) 623-7727
Fax.  (512) 623-7729

KEVIN COSTELLO (*pro hac vice*)
kcostello@law.harvard.edu
Harvard Law School Center for Health Law &
Policy Innovation
1585 Massachusetts Avenue
Cambridge, MA 02138
Tel.  (617) 496-0901

DAVID C. TOLLEY (*pro hac vice*)
david.tolley@lw.com
AMANDA BARNETT (*pro hac vice*)
amanda.barnett@lw.com
AVERY E. BORRELIZ (*pro hac vice*)
avery.borreliz@lw.com
LATHAM & WATKINS LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
Tel.  (617) 880-4610
Fax:  (617) 948-6001

*Counsel for Plaintiffs*


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/* Michael R. Abrams
MICHAEL R. ABRAMS
State Bar No. 24087072
Michael.Abrams@oag.texas.gov
ROLA DAABOUL
State Bar No. 24068473
Rola.Daaboul@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.  (512) 463-2120
Fax:  (512) 320-0667

*Counsel for Defendants*

27

**CERTIFICATE OF CONFERENCE**

I certify under penalty of perjury under Texas law that counsel for the Parties met and conferred in good faith over the issues raised by this motion and the language of the proposed Order attached hereto and that counsel for Defendants has agreed to the relief requested herein.

/s/ Amanda Barnett
Amanda Barnett

**CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's electronic case filing system.

/s/ Amanda Barnett
Amanda Barnett