# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| DORENA COLEMAN, CURTIS JACKSON, and FEDERICO PEREZ, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | No. 1:20-CV-00847-RP |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CECILE ERWIN YOUNG, Executive Commissioner, JORDAN DIXON, Interim Chief Policy and Regulatory Officer, MAURICE MCCREARY, Chief Operating Officer, and MICHELLE ALLETTO, Chief Program and Services Officer, in their official capacities with the Texas Health and Human Services Commission, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE MOTION ...................................................................1

II.  BACKGROUND ........................................................................................1

III. OVERVIEW OF THE SETTLEMENT AGREEMENT AND EXECUTION OF ITS PROVISIONS TO DATE ....................................................................3

    A.  HHSC Agreed to Stop Restricting Access to Medicaid Coverage Based on Fibrosis Score.....................................................................................3

    B.  Notice to the Medicaid HCV Class ...................................................4

    C.  Public Documentation and Provider Education ...................................4

    D.  Release of Claims .............................................................................5

    E.  Continuing Jurisdiction and Enforcement ...........................................5

    F.  Attorney Fees and Costs ...................................................................5

    G.  Class Notice Period ..........................................................................6

IV. LEGAL STANDARD...................................................................................7

    A.  Standard for Final Approval of Settlement Agreements..........................7

    B.  Standard for Final Approval of Class Certification ...............................9

V.  ARGUMENT ...........................................................................................10

    A.  The Court Should Grant Final Approval of the Parties' Settlement Agreement.......................................................................................10

        i.   The Court Should Grant Final Approval Because the Class Representatives and Class Counsel Adequately Represent the Class...................................................................................10

        ii.  The Court Should Grant Final Approval Because the Proposal Was Negotiated at Arm's Length.......................................................11

        iii. The Court Should Grant Final Approval Because the Relief Provided for the Class is Adequate...........................................12

            a.  The complexity, expense, and likely duration of the litigation. ........................................................................12

i

b.    The stage of proceedings and amount of discovery completed. ........................................................12

c.    The probability of success on the merits. ............................12

d.    The range of possible recovery. ..........................................13

e.    The opinion of class counsel, class representatives, and absent class members. ........................................................13

iv.    The Court Should Grant Final Approval Because the Settlement Treats all Class Members Equitably. ............................................14

B.    Final Class Certification is Appropriate ............................................14

i.    Ascertainability ........................................................................14

ii.    Numerosity ..............................................................................15

iii.    Commonality ............................................................................16

iv.    Typicality ................................................................................17

v.    Adequacy ..................................................................................17

C.    Rule 23(B)(2) requirements ................................................................18

D.    Appointment of Class Counsel ............................................................19

VI.    CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alabama Nursing Home Ass'n v. Harris*,
617 F.2d 385 (5th Cir. 1980) ..................................................................................18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................9

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ..................................................................................12

*Berger v. Compaq Comput. Corp.*,
257 F.3d 475 (5th Cir. 2001) ............................................................................10, 17

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
424 F. Supp. 3d 456 (E.D. La. 2020) ................................................................. *passim*

*Conrad v. GMAC*,
283 F.R.D. 326 (N.D. Tex. 2012) ...........................................................................15

*Corley v. Entergy Corp.*,
222 F.R.D. 316 (E.D. Tex. 2004)............................................................................18

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .................................................................................7

*DeOtte v. Azar*,
332 F.R.D. 188 (N.D. Tex. 2019) ...........................................................................15

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
No. MDL 071873, 2008 WL 5423488 (E.D. La. Dec. 29, 2008)............................9

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................................................17

*Horton v. Goose Creek Indep. Sch. Dist.*,
690 F.2d 470 (5th Cir. 1982) ..................................................................................17

*Ingram Corp. v. J. Ray McDermott & Co.*,
698 F.2d 1295 (5th Cir. 1983) ..................................................................................7

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) ............................................................................13, 14

iii

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999) ............................................................9

*Maldonado v. Ochsner Clinic Found*.,
    493 F.3d 521 (5th Cir. 2007) ...............................................................18

*Matson v. NIBCO Inc*.,
    No. 5-19-CV-00717, 2021 WL 4895915 (W.D. Tex. Oct. 20, 2021).......................................8

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ...............................................................16

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    295 F.R.D. 112 (E.D. La. 2013) ............................................................11

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) ..............................................................12

*Pederson v. Louisiana State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ...............................................................15

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..............................................................14

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) ...............................................................7

*Reed v. GMC*,
    703 F.2d 170 (5th Cir. 1983) ................................................................8

*Stewart v. Winter*,
    669 F.2d 328 (5th Cir. 1982) ...............................................................16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .............................................................7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................................9, 17

## STATUTES

42 U.S.C.
    § 1396a(a)(8)............................................................................16
    § 1396a(a)(10)(A) ....................................................................2, 15

## RULES

Fed. R. Civ. P.

23 .................................................................................................................7, 9
23(a) ................................................................................................................9
23(a)(1) ...........................................................................................................15
23(a)(2) ...........................................................................................................16
23(a)(3) ...........................................................................................................17
23(b)(2) ................................................................................................9, 18, 19
23(e) ....................................................................................................1, 7, 8, 13
23(e)(2) .........................................................................................................7, 8
23(e)(2)(A) ......................................................................................................10
23(e)(3) ............................................................................................................8
23(e)(4) ............................................................................................................9
23(g) .........................................................................................................10, 19

## TREATISES

1 Newberg On Class Actions
   § 3.05 at 3-25 (3d ed. 1992) ......................................................................16

## I.    SUMMARY OF THE MOTION

The Parties jointly move this Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order granting final approval of the settlement reached in this action. On March 10, 2021, the Parties filed a Joint Motion for Preliminary Approval of Settlement. *See* ECF No. 44. The Court granted preliminary approval of the settlement, conditionally certified the class, and approved the proposed class notice. *See* Order Approving Mot. for Prelim. Approval of Settlement ("Order") (Mar. 25, 2021), ECF No. 45. The class notice period has closed, and the Parties now move for final certification of the class and final approval of the settlement.

The Court should grant final approval of the Parties' settlement and final certification of the requested class. The agreement between the parties ("Settlement Agreement"), ECF No. 44-21, provides nearly all the relief sought in the Plaintiffs' initial Complaint and removes additional prior authorization criteria to accessing hepatitis C virus ("HCV") treatment coverage in the form of Direct Acting Antiviral ("DAA") medications.

## II.    BACKGROUND

On August 13, 2020, representative Plaintiffs Dorena Coleman, Curtis Jackson, and Federico Perez (collectively, "Class Representatives"), filed suit on behalf of themselves and other Texas Medicaid enrollees diagnosed with HCV. *See* Compl. ¶ 1 (Aug. 13, 2020), ECF No. 1. The Complaint alleged that Defendants, officers of the Texas Health and Human Services Commission ("HHSC")[1] violated certain provisions of the Social Security Act of 1965 ("Medicaid Act") by restricting Texas Medicaid beneficiaries' access to DAA treatment. *Id.* ¶ 16. At the time, Texas Medicaid policy and practice restricted access based on Metavir Fibrosis Score.

---

[1] Defendant Victoria Ford has since retired and, in accordance with Federal Rule of Civil Procedure 25(d), her successor, Jordan Dixon, is automatically substituted as a party.

On August 14, 2020 Plaintiffs moved to certify a class (the "Medicaid HCV Class"). *See* ECF No. 10. The class consists of all individuals who:

a. Are or will in the future be enrolled in the Texas Medicaid Program as categorically needy individuals, as defined by 42 U.S.C. § 1396a(a)(10)(A);

b. Have been or will be diagnosed as having an infection of the Hepatitis C Virus;

c. Have been or will be prescribe DAA treatment by a qualified prescriber; and

d. Would be eligible for DAA treatment but for the Prior Authorization Criteria and Policy's fibrosis score threshold.

*Id.* at 19–20.

On September 28, 2020, Defendants filed a Motion to Dismiss. *See* ECF No. 19. On October 27, 2020, Plaintiffs opposed that motion. *See* ECF No. 24. Contemporaneously, the parties engaged in initial discovery. On October 13, 2020, Plaintiffs served their First Set of Requests for Production of Documents to Defendants. Defendants produced thousands of pages of responsive documents on November 19, 2020, November 24, 2020, December 14, 2020, and December 15, 2020. Formal settlement negotiations began on December 1, 2020, when the Parties conducted their first mediation session with the Honorable Patrick Keel. The Parties reached an agreement in principle on December 17, 2020. *See* ECF. No. 35. To provide interim relief to the proposed class, Defendant agreed and the Court ordered HHSC to modify the prior authorization criteria for approval of DAA treatment such that all individuals with fibrosis scores at F2 or above and those with severe extrahepatic effects would be eligible to receive treatment effective March 1, 2021. *See id.* The Court entered the requested Order on January 4, 2021. *See* ECF No. 40.

On March 10, 2021, the Parties filed a Joint Motion for Preliminary Approval, ECF No. 43, asking the Court to conditionally certify the requested class and submitting the Settlement Agreement for scrutiny, *see* ECF No. 44-21. On March 25, 2021, this Court granted the Parties' Joint Motion, approved of the plan for class notice, and conditionally certified the class. *See* ECF No. 45. The Court set a Fairness Hearing for November 22, 2021. *See* ECF No. 49.

## III.    OVERVIEW OF THE SETTLEMENT AGREEMENT AND EXECUTION OF ITS PROVISIONS TO DATE

The Settlement Agreement provided nearly all of the relief sought in the Complaint, allowed for the certification of the class, described the parties' obligations during the class period, and described the release of certain class member claims, among other provisions.

### A.    HHSC AGREED TO STOP RESTRICTING ACCESS TO MEDICAID COVERAGE BASED ON FIBROSIS SCORE.

In accordance with the terms of the Settlement Agreement, HHSC agreed to amend its Prior Authorization Criteria for HCV DAA treatment, effective September 1, 2021.[2] Accordingly, the amended Prior Authorization Criteria no longer restricts Medicaid coverage based on the patient's Metavir Fibrosis Score. ECF No. 44-21 ¶ 2; Decl. of Priscilla Parrilla ("Parrilla Decl.") ¶ 4 (Nov. 15, 2021), attached hereto as Exhibit 1. Additionally, HHSC agreed to remove restrictions on DAA treatment coverage based on sobriety status and specialist approval. ECF No. 44-21 ¶ 2; Parrilla Decl. ¶ 5. Further, HHSC stipulated that it would not make additional changes to the Prior Authorization Criteria or DAA treatment policy before August 31, 2023, unless medical standards or guidance on Metavir Fibrosis Score or relevant Medicaid law were to change. ECF No. 44-21 ¶¶ 2–3. In that event, the Settlement Agreement allows HHSC to update its Prior Authorization Criteria and Policy for DAA treatment consistent with those changes. Should those changes occur before August 21, 2023, HHSC will provide notice to Class Counsel thirty days before the changes take effect. *Id.* ¶ 3. The Parties also agreed that HHSC may implement immediate changes as necessary to conform to any safety guidance issued by the federal Food and

---

[2] ECF No. 44-21 ¶ 2. HHSC's agreement to amend the Prior Authorization Criteria was subject to approval from the Texas Legislature. *See id.* ¶ 27; ECF No. 44 at 3–4.

Drug Administration. *Id.* If Texas Medicaid optional pharmacy benefits are eliminated, HHSC shall have no obligation to continue providing DAA treatment. *Id.*

On September 1, 2021, a new Prior Authorization Policy became effective concerning access to HCV treatment for all Texas Medicaid enrollees. *See* Parrilla Decl. ¶¶ 4–5, 32.  As contemplated in the Settlement Agreement, this new policy removed all restrictions on Texas Medicaid coverage based on the patient's Metavir Fibrosis Score. *Id.* Additionally, HHSC removed all restrictions on DAA treatment coverage based on sobriety status and specialist approval. *Id.*

### B.    NOTICE TO THE MEDICAID HCV CLASS

In the Settlement Agreement, HHSC agreed to "demonstrate a good faith effort" to distribute notice to all individuals currently enrolled in Texas Medicaid who have been diagnosed with HCV and who have not previously received DAA treatment. ECF No. 44-21 ¶ 9. The Parties agreed that the notice would include "(A) a statement that DAA coverage under the Medicaid program is only available to current Texas Medicaid recipients; (B) a statement that any previously denied Medicaid recipient who remains interested in DAA treatment should seek a consultation with their medical provider regarding whether DAA treatment is still appropriate for them; and (C) a statement informing Texas Medicaid recipients" about the changes to HHSC's Prior Authorization Criteria and Policy. *Id.* ¶ 10.

### C.    PUBLIC DOCUMENTATION AND PROVIDER EDUCATION

HHSC agreed to work in partnership with the Department of State Health Services ("DSHS") to leverage its contacts with community partners to share information about the new criteria for HCV coverage. ECF No. 44-21 ¶ 11. HHSC agreed to distribute information about the availability of DAA treatment for Hepatitis C by using "public postings in regional HHSC eligibility offices" and by publishing information on the HHSC agency website. *Id.* HHSC also

agreed to publish new HCV Prior Authorization Criteria forms containing the revised criteria and policy. *Id.* ¶ 12. Additionally, HHSC agreed to publish information for providers in the Provider Bulletin about the updated coverage criteria, and to coordinate with Managed Care Organizations and provider networks throughout Texas to promote awareness of the change in policy. *Id.*

Throughout the two-year settlement period from September 1, 2021 to August 31, 2023 at regular three-month intervals, HHSC agreed to provide Class Counsel with documentation of HHSC's Provider Bulletins and Provider Association Notices, Hepatitis C Prior Authorization Form revisions, and copies of DSHS emails to community partners that address HHSC's policies and practices for Medicaid coverage of HCV treatment. *Id.* ¶ 13. HHSC agreed that the first production of these documents will occur on December 1, 2021. *Id.*

### D.    RELEASE OF CLAIMS

In exchange for the negotiated benefits in the Settlement Agreement, the Class Representatives and the conditionally approved Medicaid HCV Class agreed to release only claims for injunctive and declaratory relief relating to HHSC's previous denial of coverage for DAAs based on fibrosis score. ECF No. 44-21 ¶ 15. The release <u>does not release</u> claims for monetary damages for individual class members. *Id.*

### E.    CONTINUING JURISDICTION AND ENFORCEMENT

The Settlement Agreement reflected the Parties' consensus to request that the Court retain continuing jurisdiction to enforce the terms of the agreement for a period through August 1, 2023. ECF No. 44-21 ¶ 32. The Settlement Agreement also set forth procedures to be followed by both parties in the event of a dispute. *Id.* ¶¶ 6–8.

### F.    ATTORNEY FEES AND COSTS

Contemporaneous with the filing of this joint motion, Class Counsel is filing a comprehensive attorneys' fees and costs petition.

### G.    CLASS NOTICE PERIOD

HHSC administers its Medicaid program by contracting with Managed Care Organizations ("MCOs") throughout the state. For those not enrolled in a MCO, Texas Medicaid also administers the program directly for fee-for-service beneficiaries. HHSC leveraged its contracts with MCOs to distribute notice in accordance with this Court's order. Each MCO received instructions for identifying likely class members within their own health systems and providing notice as approved by the Court. *See* Parrilla Decl. ¶¶ 6, 10. All seventeen Texas Medicaid MCOs sent notice to those identified as likely class members by July 30, 2021. *See id.* ¶¶ 11–27.

In addition to the mailed class notice, Class Counsel set up a website for class members to receive more information about the lawsuit and settlement. *See* Decl. of Kevin Costello ("Costello Decl.") ¶ 7 (Nov. 15, 2021), attached hereto as Exhibit 2. Class Counsel, at their own expense, reserved a domain name and published information on the website regarding the settlement and opportunities to request more information. *Id.* The website has been publicly available on the Internet since July 7, 2021, and will remain available until at least August 31, 2023. *Id.* ¶ 8.

Class Counsel also provided a phone number for class members to call for more information. Class Counsel created a voicemail box to field calls from class members, answer questions, and respond to any concerns. Class Counsel received more than 430 voicemail messages from class members during the class notice period and made every effort to return each call, answering class members' questions and explaining the nature of the settlement. *See id.* ¶¶ 9–12. A total of seven class members also mailed letters to the Court, inquiring about the content of the settlement, and asking for more information. *See id.* ¶¶ 14–21.

During the class notice period, HHSC coordinated with provider networks throughout Texas to promote awareness of the change in policy. On June 29, 2021, HHSC mailed a notice with updated Prior Authorization Guidance from their Chief Medical Officer, Dr. Ryan Van

Ramshorst, to all MCOs' Medical Directors to distribute to their respective networks. *See* Parrilla Decl. ¶ 31.

To promote provider awareness of the policy change, HHSC published bulletin postings to three provider websites: TXVendorDrug.org, tmhp.com, and hidinc.com. *See id.* ¶ 29. The bulletin postings announced the change in DAA coverage policy, effective September 1, 2021.

Additionally, as required by the Settlement Agreement, HHSC updated the HCV Prior Authorization Criteria forms and published them on the Texas Health and Human Services website. *See id.* ¶ 32.

## IV.    LEGAL STANDARD

### A.    STANDARD FOR FINAL APPROVAL OF SETTLEMENT AGREEMENTS

Courts generally agree that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement," especially when, as here, the parties both agree to the compromised settlement. *Cotton v. Hinton*, 559 F.2d 1326, 1330–31 (5th Cir. 1977); *see also Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1306 (5th Cir. 1983). Federal Rule of Civil Procedure 23(e) requires a proposed class action settlement to receive court approval. *Piambino v. Bailey*, 610 F.2d 1306, 1327 (5th Cir. 1980). Courts applying Rule 23 engage in a two-step approval process— consisting of a preliminary hearing and a final approval hearing—to determine if the settlement is "fair, reasonable, and adequate," the proposed class should be certified, and class counsel should be appointed. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 484–95 (E.D. La. 2020); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

Following preliminary approval by the court, and after the class notice period, courts perform a more rigorous analysis to ensure the settlement is "fair, reasonable, and adequate." Fed.

R. Civ. P. 23(e)(2). Until 2018, when Rule 23(e) was amended, the Fifth Circuit evaluated settlement agreements by applying the following factors from *Reed v. GMC*, considering:

    (1)  the existence of fraud or collusion behind the settlement;

    (2)  the complexity, expense, and likely duration of the litigation;

    (3)  the stage of the proceedings and the amount of discovery completed;

    (4)  the probability of plaintiffs' success on the merits;

    (5)  the range of possible recovery; and

    (6)  the opinions of the class counsel, class representatives, and absent class members.

703 F.2d 170, 172 (5th Cir. 1983); *Union Asset Mgmt. Holding*, 669 F.3d at 639. In 2018, Rule 23(e) was amended to explain that a settlement is "fair, reasonable, and adequate" if:

    (A)  the class representatives and class counsel have adequately represented the class;

    (B)  the proposal was negotiated at arm's length;

    (C)  the relief provided for the class is adequate, taking into account:

        (i)  the costs, risks, and delay of trial and appeal;

        (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)  any agreement required to be identified under Rule 23(e)(3); and

    (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

    Following the 2018 amendment, federal district courts have used *both* the new text of Rule 23(e) and the *Reed* factors in conjunction with each other to evaluate settlements. As one court explained, the factors articulated in Rule 23(e) are "meant to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,' rather than 'displace any factor' sanctioned by the circuit courts." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 485 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendments); *see also Matson v. NIBCO Inc.*, No. 5-19-CV-00717, 2021

WL 4895915, at *9 (W.D. Tex. Oct. 20, 2021) (noting the overlap between Rule 23 and the *Reed* factors and "follow[ing] the lead of other courts in this circuit" by combining the factors to analyze a proposed settlement). Thus, the court should "consider the Rule 23 requirements as informed by the *Reed* factors." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 485.

## B.    STANDARD FOR FINAL APPROVAL OF CLASS CERTIFICATION

To determine whether or not to grant final class certification, courts look to the requirements in Federal Rule of Civil Procedure 23, which was "designed 'to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.'" *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. MDL 071873, 2008 WL 5423488, at *3 (E.D. La. Dec. 29, 2008) (quoting *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 419 (S.D. Tex. 1999)). This protects the "absent class members [by ensuring they] can fairly be bound by decisions of the class representatives." *Id.* at *3 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997)). Before the court can issue final approval of the requested class certification, it must find the class demonstrates sufficient (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). If all four requirements are met, the class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* 23(b)(2). A class certified under Rule 23(b)(2) is considered a "mandatory class" because the relief must affect the whole class at one time. Since the Parties here seek certification under Rule 23(b)(2), the opt-out ability requirement contemplated under Rule 23(e)(4) does not apply. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

Finally, the court must determine whether to appoint class counsel. Applying Rule 23(g) to determine whether the proposed counsel satisfy their duty to fairly and adequately represent the interests of the class, courts:

> (A) must consider:
>> (i) the work counsel has done in identifying or investigating potential claims in the action;
>> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>> (iii) counsel's knowledge of the applicable law; and
>> (iv) the resources that counsel will commit to representing the class; and
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g).

## V.    ARGUMENT

### A.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT.

#### i.    The Court Should Grant Final Approval Because the Class Representatives and Class Counsel Adequately Represent the Class.

Under Federal Rule of Civil Procedure 23(e)(2)(A), the Court must assess whether the class has been adequately represented both by Class Counsel and by the Class Representatives, including "the zeal and competence of the representative[s'] counsel and . . . the willingness and ability of the representative[s] to take an active role in and control the litigation." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001).

Both Class Representatives and Class Counsel have zealously advocated on behalf of the class throughout litigation, discovery, and settlement negotiations. In its Order granting preliminary approval of the settlement, the Court found that the "class counsel will fairly and adequately represent the interests of the class." *See* ECF No. 45 at 7. Specifically, the Court noted counsel's "extensive civil litigation experience, including in health-care litigation." *Id.*; *see also*

Costello Decl. ¶¶ 1–4; *see also* ECF Nos. 44-5, 44-13 & 44-14. Class Representatives have also proven their ability to fairly and adequately represent the class. Dorena Coleman, Curtis Jackson, and Federico Perez fully understand their responsibilities as Class Representatives, engaged in discovery, and actively participated in the settlement negotiation process. Costello Decl. ¶ 25; *see also* ECF Nos. 44-5–44-12.

> ### ii. The Court Should Grant Final Approval Because the Proposal Was Negotiated at Arm's Length.

When a settlement agreement is borne out of negotiations between experienced class counsel—as the negotiations in this case made clear—there is a strong presumption in favor of approval. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 485. Evidence of "lengthy, hard-fought negotiations," and involvement of a third party "demonstrate[s] a lack of fraud or collusion behind the settlement." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 146 (E.D. La. 2013).

While this litigation was not especially lengthy, each of these criteria are easily met. First, as the Court noted in its Order, Class Counsel's civil litigation experience is "extensive." ECF No. 45 at 7. Further, "[d]efendants have already produced 'several hundred documents' during discovery . . . before arriving at the proposed settlement." *Id.* at 4. This enabled both sides to engage in "vigorous, arms-length negotiations" throughout litigation and settlement. *Id.* Parties on both sides of this case expended significant resources, attorney and staff hours, and advocated zealously for their clients. Costello Decl. ¶ 23; *see also* Decl. of Jeff Edwards in Support of Mot. to Approve Attys' Fees & Expenses ¶¶ 26, 61–68 (Nov. 12, 2021) (filed contemporaneously herewith); Decl. of David Tolley in Supp. of Mot. to Approve Attys' Fees & Expenses ¶ 8 (Nov. 13, 2021) (filed contemporaneously herewith). The role played in mediation by the Honorable Patrick Keel also shows the absence of fraud or collusion between the parties.

### iii.   The Court Should Grant Final Approval Because the Relief Provided for the Class is Adequate.

#### a.   *The complexity, expense, and likely duration of the litigation.*

This case involves over 16,000 class members, technical medical diagnoses, data, and policies relating to the standard of care for HCV treatment, and complex legal issues that Defendants would contest throughout litigation. When facing complex legal questions and procedural issues such as those raised in this matter, a fair settlement can avoid the risks of continued litigation while reaping the benefits of settlement negotiations. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (finding that settling can "avoid[] the risks and burdens of a potentially protracted litigation"). The Settlement Agreement provides the Plaintiffs nearly all of the relief they would have sought through litigation. Therefore, "the proposed settlement provides Plaintiffs with their desired relief while conserving resources." *See* ECF No. 45 at 4.

#### b.   *The stage of proceedings and amount of discovery completed.*

Both Class Counsel and Defense Counsel have vigorously advocated for their clients throughout this litigation and settlement period. As the Court noted, "Defendants have already produced 'several hundred documents' during discovery[.]" *See id.* The motion practice and discovery proceedings described herein, *see* Section II, *supra*, allowed both Parties to understand the full extent of the case and negotiate fairly.

#### c.   *The probability of success on the merits.*

"[A]bsent fraud or collusion, the most important factor is the probability of the plaintiffs' success on the merits," and a settlement should be reviewed "in light of the strength of the case presented by the plaintiffs." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Plaintiffs believe they would succeed on their claims at trial, but continued litigation poses "significant

12

obstacles." *See* ECF No. 45 at 4. In light of the fact that the Settlement Agreement achieves for Plaintiffs the primary relief sought at the outset, this factor favors settlement.

d.    <em>The range of possible recovery.</em>

At the outset of litigation, Plaintiffs only sought injunctive and equitable relief—Plaintiffs did not allege monetary damages in the Complaint. *See generally* ECF No. 1. As the Court noted, Defendants have already agreed to "suspend[] the allegedly unlawful restrictions to class members' access to DAA treatment" in the Settlement Agreement, leaving nothing to be gained by continuing to pursue recovery through litigation. *See* ECF No. 45 at 4. This factor heavily favors settlement.

e.    <em>The opinion of class counsel, class representatives, and absent class members.</em>

Class counsel have experience in similar litigation and believe this settlement is fair, reasonable, and adequate. *See* Costello Decl. ¶ 5. In addition, the Court held that "the proposed notice, opportunity for objections, and fairness hearing will provide sufficient protection to absent class members." *See* ECF No. 45 at 4. The mailed class notice included information about the contents of the Settlement Agreement, provided a phone number to call in case of additional questions, and listed the date and time of the settlement approval hearing. Class members were able to contact class counsel directly and ask any questions about the proposed Settlement Agreement.

Absent class members received notice and had the opportunity to object to the settlement. Rule 23(e) requires that all class members must receive "direct notice in a reasonable manner." *See* Fed. R. Civ. P. 23(e). Notice must reasonably provide class members enough information to know whether or not they should object to the settlement. *See In re Katrina Canal Breaches Litig*., 628 F.3d 185, 197 (5th Cir. 2010). In fact, "a settlement notice need only satisfy the 'broad

13

reasonableness standards imposed by due process.'" *Id.* (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999)). This case easily meets that standard. As described *supra*, in July 2021, HHSC mailed Class Notice to all class members notifying them that the DAA treatment policy for HCV treatment had changed. Class Counsel, at their own expense, reserved a domain name and published information on the website regarding the settlement and opportunities to request more information. *See* Costello Decl. ¶ 7. Class counsel also received and returned more than 400 phone calls from absent class members who had further questions about the lawsuit and settlement. *See id.* ¶¶ 9–10.

### iv. The Court Should Grant Final Approval Because the Settlement Treats all Class Members Equitably.

Because the requested relief affects all class members in the same way, both Class Representatives and absent class members are treated equitably. Because each Class Representative is substantially similar to each absent class member with regard to the relevant features of this case, the negotiated policy change will impact all members in the same way. Additionally, if there was any concern about equitable treatment, absent class members have sufficiently received notice and had opportunity to object to the settlement. There were no objections. *See* Costello Decl. ¶ 22.

### B. FINAL CLASS CERTIFICATION IS APPROPRIATE

For purposes of this Settlement Agreement, Defendants do not oppose class certification and no recipients of class notice lodged an objection. The conditions necessary for final class certification are present here.

### i. Ascertainability

This Court has already affirmed that this class is narrowly defined and easily ascertained. *See* ECF No. 45 at 5. Ascertainability is easily proven when "members can be ascertained by

reference to objective criteria." *DeOtte v. Azar*, 332 F.R.D. 188, 195 (N.D. Tex. 2019) (quoting *Conrad v. GMAC*, 283 F.R.D. 326, 328 (N.D. Tex. 2012)).

As listed in the Class Definition, four objective standards delineate this class. The proposed class is all individuals who:

      a.   Are or will in the future be enrolled in the Texas Medicaid Program as categorically needy individuals, as defined by 42 U.S.C. § 1396a(a)(10)(A);

      b.   Have been or will be diagnosed as having an infection of the Hepatitis C Virus;

      c.   Have been or will be prescribe DAA treatment by a qualified prescriber; and

      d.   Would be eligible for DAA treatment but for the Prior Authorization Criteria and Policy's fibrosis score threshold.

ECF No. 10 at 19–20.

Not only is this class delineated by objective standards, the class notice period proved the class's ascertainability in practice. All seventeen Texas Medicaid MCOs were able to identify and notify likely class members based on the discrete standards described. Over 16,000 class notices were mailed and more than 400 individual class members responded to the notice by contacting class counsel throughout the notice period. Class Counsel made every effort to speak directly with each class member who called. *See* Costello Decl. ¶¶ 9–12, 22.

      **ii.   Numerosity**

According to Federal Rule of Civil Procedure 23(a)(1), to maintain class certification, plaintiffs must show that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). While there is no "clear formula" for establishing whether the numerosity requirement has been met, class counsel should demonstrate "some evidence or reasonable estimate of the number of purported class members." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 482 (quoting *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000)).

The conditionally certified class is sufficiently numerous to meet this requirement. By the end of the class notice period, over 16,000 individual class notices were mailed to class members

across the state. *See* Parrilla Decl. ¶¶ 11–28. The conditional class consists of thousands of individuals, making joinder of individual lawsuits impracticable. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (stating that "any class consisting of more than forty members 'should raise a presumption that joinder is impracticable'") (quoting 1 Newberg On Class Actions § 3.05 at 3–25 (3d ed. 1992)).

### iii.    Commonality

The commonality requirement of Rule 23(a)(2) requires that there are "questions of law or fact common to the class" to maintain a class action. Fed. R. Civ. P. 23(a)(2). In other words, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982).

The resolution of DAA Medicaid coverage for HCV treatment affects every member of the conditionally certified class. *See* ECF No. 45 at 6 ("[T]he class seeks to challenge the 'common policy' of HHSC's denial of DAA treatment to certain individuals."). There are several legal and factual questions that are common to all members of the class, including:

- What constitutes standard of care for treatment of HCV;
- Whether withholding DAA treatment coverage to Medicaid enrollees with
- HCV violates such standard of care or medical necessity;
- Whether putative class members are similarly situated to other Medicaid enrollees with respect to medical need;
- Whether Texas Medicaid employs any other disease severity threshold for approval of a cure for any other similar chronic illness;
- Whether a denial of coverage until suffering a qualifying fibrosis score is permissible under the reasonable promptness provision of 42 U.S.C. § 1396a(a)(8); and
- Whether the Policy is in place for cost reasons, rather than medical reasons.

Any uncertainty about the common experiences of the proposed class has been dispelled throughout the class notice period. All plaintiffs' claims "can productively be litigated at once."

*Wal-Mart Stores*, 564 U.S. at 349–50. The conditionally certified class satisfies the commonality requirement.

### iv.    Typicality

To protect absent class members' interests, a class action may only be maintained if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The Class Representatives are sufficiently similar to all class members to adequately represent their interests. Dorena Coleman, Curtis Jackson, and Federico Perez all suffered the same injury that harmed absent class members and the same relief cures that injury for all class members. *See* Costello Decl. ¶ 12. Like all class members, the representative plaintiffs are (i) individuals who are enrolled in the Texas Medicaid Program; (ii) who were diagnosed with HCV; (iii) who have been prescribed DAA treatment by a qualified prescriber; and (iv) who have not already completed a course of DAA treatment and achieved sustained virologic response.

### v.    Adequacy

Before certifying a class, the Court must consider the adequacy of class counsel, specifically examining both the absence of conflicts of interest between the proposed representatives and the class, and the competency of class counsel. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 483; *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This requirement also mandates that the class representatives have "the willingness and ability . . . to take an active role in and control the litigation." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)*; see also Berger*, 257 F.3d at 479–80.

Both Class Representatives and Class Counsel have zealously advocated on behalf of the class throughout litigation, discovery, and settlement negotiations. The Court found that the "class counsel will fairly and adequately represent the interests of the class." *See* ECF No. 45 at 7.

17

Specifically, the Court noted counsel's "extensive civil litigation experience, including in health-care litigation." *Id; see also* Costello Decl. ¶¶ 2–4. Class representatives have also proven their ability to fairly and adequately represent the class. Dorena Coleman, Curtis Jackson, and Federico Perez fully understand their responsibilities as class representatives and have, at inconvenience to themselves, responded to discovery, made themselves available for deposition, and actively participated in the case. *See id.* ¶ 25.

### C.    RULE 23(B)(2) REQUIREMENTS

Following Rule 23(b)(2), the Court must determine that "[1] the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that [2] final injunctive relief or corresponding declaratory relief is appropriate." Fed. R. Civ. P. 23(b)(2). This Court held that the Plaintiffs in this case satisfy the requisite Rule 23(b)(2) requirements. *See* Order, ECF. No 45 at 7; Fed. R. Civ. P. 23(b)(2). As interpreted by the Fifth Circuit, the first requirement mandates that class members must have been harmed by a common behavior by Defendants in essentially the same way. *See Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007). Because all members in the conditionally certified class were harmed in the same way by HHSC's previous DAA coverage policy, this standard is met. *See* ECF No. 45 at 5.

The second requirement of Rule 23(b)(2) states that injunctive or declaratory relief must be the predominant relief sought and that injunctive relief must be specific. *See* Fed. R. Civ. P. 23(b)(2); *see also Corley v. Entergy Corp.*, 222 F.R.D. 316, 322 (E.D. Tex. 2004). Every order granting injunctive relief must be specific enough to describe in reasonable detail the acts that are enjoined. *Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387 (5th Cir. 1980). This Court found that the requested relief in the Settlement Agreement is both "'specific in its terms' and 'describe[s] in reasonable detail the act or acts' that are to be enjoined." *See* ECF No. 45 at 7 (quoting *Ala. Nursing Home Ass'n*, 617 F.2d at 387). As described, the permanent injunction to

prevent Defendants from denying DAA coverage to Medicaid enrollees both addresses a common harm and is specific enough to meet the Rule 23(b)(2) requirements.

### D.    APPOINTMENT OF CLASS COUNSEL

Plaintiffs, on behalf of the conditionally approved class, seek the appointment of Jeff Edwards, Mike Singley, and David James of Edwards Law Group, Kevin Costello of the Center for Health Law & Policy Innovation of Harvard Law School, and David Tolley, Amanda Barnett, Avery Borreliz, and Allison Carbonaro of Latham & Watkins, LLP, as Class Counsel. Under Federal Rule of Civil Procedure 23(g), there are four factors a court should consider before appointing class counsel. Those factors are "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

This Court found that proposed counsel met these requirements and conditionally appointed class counsel. *See* ECF No. 45 at 7. These attorneys have each had extensive careers in complex action litigation. Throughout litigation, discovery, and settlement, the proposed class counsel attorneys have advocated vigorously for their clients, fairly and adequately representing the interests of the class. *See* Costello Decl. ¶ 23.

## VI.    CONCLUSION

The Parties respectfully request that the Court grant final approval of the Settlement Agreement and grant final certification of the Medicaid HCV Class.

Dated:  November 15, 2021                    Respectfully submitted,

                                            EDWARDS LAW
                                            By  /s/ Jeff Edwards_____
                                            JEFFREY S. EDWARDS
                                            State Bar No. 24014406
                                            jeff@edwards-law.com
                                            MICHAEL SINGLEY
                                            State Bar No. 00794642
                                            mike@edwards-law.com
                                            DAVID JAMES
                                            State Bar No. 24092572
                                            david@edwards-law.com
                                            EDWARDS LAW
                                            603 W 17th St.
                                            Austin, TX 78702
                                            Tel. (512) 623-7727
                                            Fax. (512) 623-7729

                                            KEVIN COSTELLO (*pro hac vice*)
                                            Center for Health Law & Policy Innovation
                                            Harvard Law School
                                            1585 Massachusetts Avenue
                                            Cambridge, MA 02138
                                            Tel. (617) 496-0901

                                            DAVID C. TOLLEY (*pro hac vice*)
                                            david.tolley@lw.com
                                            AMANDA BARNETT (*pro hac vice*)
                                            amanda.barnett@lw.com
                                            AVERY E. BORRELIZ (*pro hac vice*)
                                            avery.borreliz@lw.com
                                            ALLISON MICHELLE CARBONARO (*pro
                                            hac vice)*
                                            allison.carbonaro@lw.com
                                            LATHAM & WATKINS LLP
                                            200 Clarendon Street, 27th Floor
                                            Boston, MA 02116
                                            Tel. (617) 880-4610
                                            Fax: (617) 948-6001

                                            *Counsel for Plaintiffs*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Assistant Solicitor General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Michael.Abrams@oag.texas.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

_____/s/ Jeff Edwards_____
Jeff Edwards