**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DORENA COLEMAN, CURTIS JACKSON, | ) | |
| and FEDERICO PEREZ, on behalf | ) | |
| of themselves and all others similarly situated, | ) | |
| | ) | No. 1:20-CV-00847-RP |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CECILE ERWIN YOUNG, Executive | ) | |
| Commissioner, JORDAN DIXON, Interim | ) | |
| Chief Policy and Regulatory Officer, | ) | |
| MAURICE MCCREARY, Chief Operating | ) | |
| Officer, and MICHELLE ALLETTO, Chief | ) | |
| Program and Services Officer, in their official | ) | |
| capacities with the Texas Health and | ) | |
| Human Services | ) | |
| Commission, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE ATTORNEYS' FEES AND
EXPENSES**

**TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF THE MOTION ..........................................................................................1

II.     REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES ................................1

   1.    A Lodestar Analysis Shows that the Requested Attorneys' Fees are
         Reasonable. .......................................................................................................3

         i)      The Hours Expended were Reasonable and Necessary to Achieve
                 the Result. ...........................................................................................4
         ii)     Plaintiffs' Counsel's Hourly Rates are Reasonable. ....................................5
         iii)    Plaintiffs' Counsel's Fee is Reasonable. ...................................................6

   2.    The Johnson Factors Justify and Confirm the Reasonable Fee. ............................6

         i)      The Litigation was Time Consuming. ......................................................7
         ii)     The Case Presented Multiple Complex Questions. ....................................7
         iii)    Highly Skilled Attorneys were Required. ................................................8
         iv)     Other Employment Opportunities Have Been Precluded. .........................8
         v)      The Proposed Fees are Customary and Market-Based. ............................8
         vi)     The Fee is Entirely Contingent. .............................................................8
         vii)    The Litigation Imposed Unique Time Limitations. ..................................8
         viii)   The Result is Impressive. ......................................................................9
         ix)     The Attorneys' Experience is Impressive and Extensive. .........................9
         x)      The Case is Considered "Undesirable." ...................................................9
         xi)     Counsel has Cultivated a Strong Relationship with the Clients. ..............10
         xii)    Similar Awards in Suits Seeking Injunctive Relief. ..............................11
         xiii)   The "Value" of the Injunctive Relief. ....................................................12
         xiv)    Costs and Litigation Expenses. ............................................................13

   3.    Attorneys' Fees and Expenses Summary. ............................................................13

III.    CONCLUSION ..........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armstrong v. NFL*,
   137 S. Ct. 607 (2016)..........................................................................................................2

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989)..........................................................................................................3, 4

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................................................3, 4

*Bowe v. Colgate–Palmolive Co.*,
   443 F. Supp. 696 (S.D. Ind. 1977)....................................................................................10

*Brannum v. Collier*,
   745 F. App'x (5th Cir. 2018)..............................................................................................6

*Bynum v. District of Columbia*,
   412 F. Supp. 2d 73 (D.D.C. 2006)....................................................................................11

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986).........................................................................................................10

*Cole v. Collier*,
   No. 4:14-cv-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018)............................................6

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .............................................................................................4

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................................11

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................. *passim*

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) .............................................................................2, 6

*In re Enron*,
   586 F. Supp. 2d at 759–60 ..............................................................................................3

*Garza v. Sporting Goods Props., Inc.*,
   No. Civ. A. SA–03–CA–108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)................................2

ii

*Gilchrist v. NFL*,
  137 S. Ct. 591 (2016) ................................................................................................2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................3

*Hernandez v. Cnty. of Monterey*,
  No. 5:13-cv-02354 (N.D. Cal. May 14, 2015)..........................................................11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
  517 F.3d 220 (5th Cir. 2008) ....................................................................................3

*Hoffman v. L & M Arts*,
  No. 3:10-CV-0953-D, 2015 WL 3999171 (N.D. Tex. July 1, 2015).........................4

*Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affs.*,
  No. 3:08-CV-0546-D, 2013 WL 598390 (N.D. Tex. Feb.15, 2013) .........................4

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................................3, 6, 7

*Jones v. White*,
  No. H-03-2286, 2007 WL 2427976 (S.D. Tex. Aug. 22, 2007).............................13

*Local 56, United Food & Com. Workers Union v. Campbell Soup Co.*,
  954 F. Supp. 1000 (D.N.J. 1997) .............................................................................2

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992) ................................................................................12

*Louisiana Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) ......................................................................................3

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ..............................................................................2

*McClain v. Lufkin Indus., Inc.*,
  649 F.3d 374 (5th Cir. 2011) ....................................................................................4

*In re Nassau Cnty. Strip Search Cases*,
  12 F. Supp. 3d 485 (E.D.N.Y. 2014) ......................................................................11

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016)......................................................................................2

*Nunez v. City of N.Y.*,
  No. 1:11-cv-05845 (S.D.N.Y. July 1, 2015).............................................................11

*Parsons v. Ryan*,
No. 2:12-cv-00601 (D. Ariz. Oct. 14, 2014)........................................................11

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)...........................................................................................11

*Saizan v. Delta Concrete Prods. Co.*,
448 F.3d 795 (5th Cir. 2006) ............................................................................4

*Shipes v. Trinity Indus.*,
987 F.2d 311 (5th Cir. 1993) ............................................................................9

*Strong v. Bellsouth Telecomm., Inc.*,
137 F.3d 844 (5th Cir. 1998) ............................................................................6

*Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1989).........................................................................................10

*Wallace v. Powell*,
288 F.R.D. 347 (M.D. Pa. 2012)......................................................................11

*Young v. Cnty. of Cook*,
No. 06 C 552, 2017 WL 4164238 (N.D. Ill. Sept. 20, 2017)..............................12

## STATUTES

42 U.S.C.
§ 1983.....................................................................................................................1
§ 1988...........................................................................................................1, 10, 13
§ 1988(b)................................................................................................................1
§ 1997e(d)............................................................................................................13
§ 12205................................................................................................................13

## RULES

Fed. R. Civ. Proc. 23(h)..............................................................................................1

Fed. R. Civ. Proc. 30(b)(6) ........................................................................................4

## TREATISES

7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1803.1 (3d ed. Apr. 2021)............................................................................10

## OTHER AUTHORITIES

Civ. Action MDL 1632, 2009 WL 10720180 (E.D. La. Apr. 3, 2009), *aff'd*, 384 F. App'x 299
(5th Cir. 2010) (per curiam)...............................................................................3

David Chen, *$8 Million Offered to End Attica Inmates' Suit*, NEW YORK TIMES
(Jan. 5, 2000)..................................................................................................................12

NEWBERG ON CLASS ACTIONS § 8.22 (5th ed.) .............................................................................2

## I.       SUMMARY OF THE MOTION

Plaintiffs and Defendants respectfully request that the Court approve the fee award the Parties negotiated. In particular, Defendants agreed to pay Class Counsel attorneys' fees, costs and expenses totaling (and not to exceed) $500,000 as of the date of the Court's order. Because the Settlement Class seeks only injunctive and declaratory relief, and not damages, there is no common fund and the amount of the fee will not change any benefit to the Settlement Class.

The amount of attorneys' fees, costs, and expenses is agreed to as a material term of the Settlement Agreement, ECF No. 44-21. A summary of Class Counsel's hours, reasonable hourly rates, and expenses is attached hereto as Exhibit 1. Detailed time sheets for each attorney and staffer for whom fees are sought are attached hereto as Exhibit 2. [1] The amount of attorneys' fees, costs, and expenses were negotiated separately after agreement was reached on the other material terms of the Settlement Agreement. Defendants stipulate that this is a fair and reasonable amount of fees, costs, and expenses, and waive their right to appeal an award of attorneys' fees, costs and expenses at the amount agreed upon by the Parties.

## II.      REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES

The Court may award "reasonable attorney[s'] fees" as part of a class action settlement. FED. R. CIV. PROC. 23(h). Plaintiffs seek fees and expenses under 42 U.S.C. § 1988. "In any action or proceeding to enforce provisions of [42 U.S.C. § 1983] the court . . . may allow . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).

---

[1] The Class is represented by attorneys from Edwards Law Group, Harvard Law School's Center for Health Law and Policy Innovation, and Latham & Watkins LLP. As Latham & Watkins is foregoing their fees in favor of co-counsel receiving the full award, Latham & Watkins' hourly rates and time sheets are not included in attached Exhibits 1 or 2.

Before an award of fees, "[n]otice of the motion must be served on all parties and . . . directed to class members in a reasonable manner." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 744 (S.D. Tex. 2008). Here, notice was provided to Settlement Class Members of "the content of the settlement *and* . . . the scope of the fee." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016) (emphasis in original) (quoting NEWBERG ON CLASS ACTIONS § 8.22 (5th ed.)), *cert. denied sub nom. Gilchrist v. NFL*, 137 S. Ct. 591 (2016), *cert. denied sub nom. Armstrong v. NFL*, 137 S. Ct. 607 (2016). The Class Action Notice, ECF No. 44-22, informs the putative class that their attorneys are seeking fees and expenses in the agreed amount of $500,000 for work performed.

Moreover, the Settlement Agreement provides for an agreed amount of the fees and expenses, which are not part of a common fund available to the settlement class. "[C]ourts have encouraged litigants to resolve fee issues by agreement, if possible." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (collecting cases). "[C]ourts are authorized to award attorneys' fees and expenses where all parties have agreed to the amount, subject to court approval[.]" *Id.* (citing *Local 56, United Food & Com. Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J. 1997)). This is especially appropriate where the attorneys' fees are "separate and apart from the class settlement – which is not a common monetary fund – and will not in any way diminish the class settlement." *Id.* at 322. Here, "[w]ere the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [the defendants]." *Id.* at 322–23 (comparing *Garza v. Sporting Goods Props., Inc.*, No. Civ. A. SA–03–CA–108, 1996 WL 56247, at *26 (W.D. Tex. Feb. 6, 1996) (noting that court is responsible for applying heightened judicial scrutiny to fee request and is not bound by amount of fee award requested by counsel in common fund case) *with McBean v. City of N.Y.*, 233

F.R.D. 377, 392 (S.D.N.Y. 2006) (recognizing that court need not review an application for attorneys' fees with heightened level of scrutiny where, as here, parties have contracted for an award of fees which will not be paid from common fund)); *see also Blum v. Stenson*, 465 U.S. 886 (1984); *In re Enron*, 586 F. Supp. 2d at 759–60 (comparing fee awards in statutory fee shifting and common fund cases).

When the amount of attorneys' fees is agreed upon, reached after all other terms of the settlement, and not the subject of a common fund – all of which is true here – the attorneys' fees are presumed to be reasonable. *See DeHoyos*, 240 F.R.D. at 322–24 (approving total award of $11,720,000). "[W]e will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than the cases from which they arose." *In re High Sulfur Content Gasoline Prods. Liab. Litig*., 517 F.3d 220, 228–29 (5th Cir. 2008) (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995)), *objections sustained in part and overruled in part*, Civ. Action MDL 1632, 2009 WL 10720180 (E.D. La. Apr. 3, 2009), *aff'd*, 384 F. App'x 299 (5th Cir. 2010) (per curiam).

1. *A Lodestar Analysis Shows that the Requested Attorneys' Fees are Reasonable.*

A reasonable fee is determined using the lodestar method. *See In re High Sulfur Content*, 517 F.3d at 228. Using a lodestar is particularly appropriate in civil rights litigation for injunctive relief because "'there is no way to gauge the net value of the settlement or any percentage thereof.'" *DeHoyos*, 240 F.R.D. at 324 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

The amount of attorneys' fees a party may recover is determined by calculating "the reasonable [number of] hours expended on the litigation [multiplied] by a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 89–90 & n.2 (1989); *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). This amount is then adjusted upward or

downward by applying a multiplier to determine a final, reasonable fee. *Blanchard v. Bergeron*, 489 U.S. at 87, 89 n.2, 94. The party seeking an award of attorney's fees pursuant to the lodestar method bears the burden of justifying any fee award. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). As Judge Posner explained, in attorneys' fee litigation, "it is not the function of judges . . . to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (collecting cases).

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (quoting *Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affs.*, No. 3:08-CV-0546-D, 2013 WL 598390, at *5 (N.D. Tex. Feb.15, 2013)) (citations omitted). The "prevailing market rate" is the rate charged "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. When counsel from "out-of-district" is required, those attorneys should be paid their "home" rates. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). The lodestar analysis weighs heavily in favor of determining the fee is reasonable.

      i)      <u>The Hours Expended were Reasonable and Necessary to Achieve the Result</u>.

First, as outlined above, significant effort was required to reach this result. Plaintiffs' attorneys spent over 1,600 hours (to date) working on their behalf. This is a reasonable amount of hours billed for a case that was built on a novel litigation theory alleging discrimination in Texas Medicaid, that also required preparation for multiple Federal Rule of Civil Procedure 30(b)(6) depositions, review of thousands of pages of documents (which does not include the medical

records of numerous potential patients who were evaluated as class representatives, or the thousands of pages of publicly available materials that were reviewed before filing), litigating class certification and a motion to dismiss, and conducting multiple mediations with Honorable Patrick Keel resulting in a complex, detailed Settlement Agreement that required numerous additional negotiation sessions. Of course, much of Plaintiffs' attorneys' efforts involved interviewing experts, patients, and doctors throughout Texas and the country.

A summary accounting of the hours Edwards Law Group and Harvard Law School's Center for Health Law and Policy Innovation ("CHLPI") spent working on the case is attached hereto as Exhibit 1, with detailed accounting, including spreadsheets for each attorney (or staff member) attached hereto in Exhibit 2.

Likewise, Plaintiffs' counsel has exercised careful billing judgment, discounting or excluding hours where appropriate. Typically, Plaintiffs' counsel did not even record time spent on short phone calls, responding to brief emails, or other similar tasks that would add up significantly. In addition, the amount negotiated by the parties is significantly below the amount actually incurred, as significant work was done pro bono by Latham & Watkins.

      ii)    <u>Plaintiffs' Counsel's Hourly Rates are Reasonable</u>.

Similarly, the hourly rates Plaintiffs' counsel agreed to accept to settle this case are more than reasonable for attorneys of their skill and experience. Reasonable hourly rates for Plaintiffs' counsel (awarded by other courts) vary from $800/hour for co-lead counsel, to $175/hour for legal assistants assigned to the case. However, in an effort to facilitate settlement and compromise, and to avoid burdening the Court with a fee dispute, co-counsel agreed to accept a fee of $500,000, an amount that is significantly below the Lodestar amount. All counsels' rates are reasonable and based on the prevailing market rate for attorneys' hourly rates in the District Courts of Texas, where this case resides, as well as accounting for counsel's significant experience in other civil

rights class action litigation. *DeHoyos*, 240 F.R.D. at 324–25 (approving 2007 hourly rates between $550 and $500 for lead counsel, $475 and $350 for associates, and $200 and $130 for legal assistants); *Cole v. Collier*, No. 4:14-cv-1698, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018), *appeal dismissed sub nom. by Brannum v. Collier*, 745 F. App'x (5th Cir. 2018) (per curiam); *see also* Decl. of Jeff Edwards ("Edwards Decl.") ¶¶ 24, 78–79 (Nov. 12, 2021), attached hereto as Exhibit 3.

iii) <u>Plaintiffs' Counsel's Fee is Reasonable</u>.

For labor performed to date, which notably does not include other expected work necessary to obtain final approval, such as attending the fairness hearing and any briefing concerning possible (though unlikely) objections, Plaintiffs' counsel's fees and expenses far exceed the agreed upon $500,000. Even after the Settlement Agreement was signed, Plaintiffs' counsel incurred additional fees monitoring and answering questions from class members, preparing a motion to approve the settlement, preparing for and attending the fairness hearing, and defending any appeals. These duties (among others), are contemplated in the $500,000 agreed fee. *See* Ex. 2, at 4–5, 30–32.

2. *The Johnson Factors Justify and Confirm the Reasonable Fee.*

Though the lodestar amount alone exceeds the agreed fee award for work already performed, evaluating the *Johnson* factors typically used to calculate a fee multiplier also justifies the result. *See Johnson*, 488 F.2d at 717–19; *In re: Enron*, 586 F.Supp.2d at 791, 803 (approving multiplier of 5.2 after evaluation of *Johnson* factors).[2] The *Johnson* factors are:

(1)     the time and labor required for the litigation;
(2)     the novelty and difficulty of the questions presented;
(3)     the skill required to perform the legal services properly;
(4)     the preclusion of other employment by the attorney due to acceptance of the case;

---

[2] In approving a class action settlement, the Court is required to evaluate the *Johnson* factors. *Strong v. Bellsouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).

(5)    the customary fee;

(6)    whether the fee is fixed or contingent;

(7)    time limitations imposed by the client or the circumstances;

(8)    the amount involved and the result obtained;

(9)    the experience, reputation and ability of the attorneys;

(10)   the "undesirability" of the case;

(11)   the nature and length of the professional relationship with the client; and

(12)   awards in similar cases.

*Johnson*, 488 F.2d at 717–19.  These factors weigh heavily in favor of determining the fee is reasonable.

      i)      <u>The Litigation was Time Consuming</u>.

This case has been time consuming for all involved. Plaintiffs' counsel has spent over 1,600 hours litigating this matter just in the year and a half since filing the case. *See, e.g.*, Ex. 3, Edwards Decl. ¶ 72; *see also* Decl. of Kevin Costello ("Costello Decl.") ¶ 23 (Nov. 15, 2021) (filed contemporaneously herewith); Decl. of David Tolley in Supp. of Pls.' Mot. to Approve Attys' Fees & Expenses ("Tolley Decl.") ¶ 8 (Nov. 13, 2021), attached hereto as Exhibit 4.

      ii)     <u>The Case Presented Multiple Complex Questions</u>.

Though the core facts of the case were not inherently complex – Defendant was denying medication capable of curing the class members' hepatitis C and Plaintiffs sought to obtain that treatment – Plaintiffs' claims did involve numerous complex issues of health care discrimination and Medicaid law (as well class action procedures). Plaintiffs' counsel researched and briefed numerous legal and medical issues. Developing Plaintiffs' arguments required intricate knowledge of a large body of federal law developed in numerous similar cases. Likewise, the case required evaluating complicated concepts in medicine, health care economics, infectious disease treatment, and Medicaid policy at the state and national level. *See* Ex. 3, Edwards Decl. ¶¶ 61, 82. Moreover, the first claim advanced by the Complaint constituted a novel litigation theory – grounded in

Medicaid's comparability requirement – that required significant investment of research and analysis. *See* Class Action Compl. ¶¶ 76–86, 143–46 (Aug. 13, 2020), ECF No. 1.

### iii)     Highly Skilled Attorneys were Required.

Plaintiffs' counsel are "skilled attorneys" who are "experienced, reputable, and able" in this "specialized area of law." *Cole*, 2018 WL 2766028, at *14; *see also* Ex. 3, Edwards Decl. ¶¶ 5–35, 37–41, 43–54, 56–58; Costello Decl. ¶¶ 2–4; Ex. 4, Tolley Decl. ¶¶ 2–7. This is a complex case that, like *Cole*, required an ability both to argue complex points of law and understand complicated medicine.

### iv)     Other Employment Opportunities Have Been Precluded.

Plaintiffs' counsel at Edwards Law, the Harvard Center for Health Law and Policy Innovation, and Latham and Watkins have been precluded from pursuing other matters due to their commitment to this litigation. Devoting significant time to this case required Plaintiffs' counsel to forgo other opportunities to represent clients with meritorious claims. *See*, *e.g.*, Ex. 3, Edwards Decl. ¶ 84.

### v)     The Proposed Fees are Customary and Market-Based.

As discussed above, the lodestar amount alone would result in a customary, market-based fee in excess of the agreed upon, negotiated amount.

### vi)     The Fee is Entirely Contingent.

The Plaintiffs are impoverished Medicaid beneficiaries who do not have the ability to pay their counsel. Absent an award of fees, counsel will not receive any compensation for their work on this matter (or recover any of the expenses). *See, e.g.*, Ex. 3, Edwards Decl. ¶ 75.

### vii)     The Litigation Imposed Unique Time Limitations.

In addition to the time spent simply litigating the case, there were other significant time limitations imposed by healthcare litigation involving the State of Texas and Medicaid, as well as

the COVID-19 pandemic. Experts were in Philadelphia and Houston. Plaintiffs were located in diverse parts of the state and Plaintiffs' counsel were located in California, Massachusetts, and Texas.

viii)    <u>The Result is Impressive</u>.

Simply put, the relief secured in this litigation will save lives and prevent serious illness. Every Settlement Class Member will be guaranteed access to DAA treatment save the few numbers of patients whose treatment would be medically contraindicated or affirmatively refuse treatment.

If anything, but for the agreement of the parties on the amount of fees and expenses, this is a case where the lodestar amount should be adjusted upward because "the case is rare and exceptional" – thousands of people will receive potentially life-saving medication and Plaintiffs obtained as much relief as they possibly could have achieved through a trial – and at a significant expedited pace.[3] *DeHoyos*, 240 F.R.D. at 326 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)); *see also Cole*, 2018 WL 2766028, at *15 (awarding multiplier to Plaintiffs' counsel to achieve a reasonable fee that reflects the *Johnson* factors).

ix)    <u>The Attorneys' Experience is Impressive and Extensive</u>.

As discussed above, counsel's experience and expertise in civil rights and class action litigation is impressive and extensive. *See* Ex. 3, Edwards Decl. ¶¶ 16–25; Costello Decl. ¶¶ 2–4; Ex. 4, Tolley Decl. ¶¶ 2–7.

x)    <u>The Case is Considered "Undesirable."</u>

Medicaid beneficiary litigation is considered "undesirable" to potential counsel for many reasons. Medicaid beneficiaries are by definition impoverished. The standard of proof is high,

---

[3] Plaintiffs are also mindful that the Defendant – after initially moving to dismiss the case, worked with Plaintiffs' counsel to achieve the result most beneficial to the Class.

especially in a case as novel as this. This case also required expert testimony – Plaintiffs' counsel retained one of the world's leading authorities on viral Hepatitis, Stacey Trooskin, M.D., as well as a leading healthcare economist, Benjamin Linas, all at Plaintiffs' counsels' risk. This is precisely the type of litigation where a "reasonable fee" is necessary to attract competent counsel to vindicate federal rights, and the type of "private attorney general" action the fee shifting statutes are meant to encourage—cases that will ensure individuals' fundamental federal rights are protected. *See Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).

> [A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. . . . And Congress has determined that the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff[.]

*City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (internal quotation marks and citations omitted). Indeed, "attorneys successfully challenging civil rights violations should be rewarded an enhanced customary fee." *DeHoyos*, 240 F.R.D. at 329 (citing *Bowe v. Colgate–Palmolive Co.*, 443 F. Supp. 696, 720 (S.D. Ind. 1977)). "[T]he objective of the award is to create a financial incentive to initiate socially desirable litigation and thereby enhance access to the adjudicative process, taking into account the amount of benefit actually produced and allowing fees to be enhanced accordingly seems particularly appropriate." 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1803.1 (3d ed. Apr. 2021).

xi)  <u>Counsel has Cultivated a Strong Relationship with the Clients.</u>

Counsel interviewed dozens of Medicaid beneficiaries diagnosed with Hepatitis C in multiple cities, as well as numerous providers throughout the State. In addition to the named plaintiffs, whom Counsel has spent hours speaking with about intimate matters concerning their medical conditions (as well as complex litigation strategy), Counsel also interviewed numerous other patients who were identified as potential witnesses. Ex. 3, Edwards Decl. ¶ 61.

10

xii)    <u>Similar Awards in Suits Seeking Injunctive Relief</u>.

Courts regularly approve much larger awards in civil rights class actions. The Supreme

Court upheld an award of over $6,000,000 in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)

(affirming the lodestar amount without any multiplier), a civil rights class action for injunctive

relief with no damages component. In *Cole*, Judge Keith Ellison of the Southern District Court of

Texas approved a $4,500,000 fee. *Cole*, 2018 WL 2766028, at *15–16. The Western District of

Texas also affirmed an even larger settlement in *DeHoyos*, 240 F.R.D. at 324, 340 (approving fee

of $11,720,000 in suit reforming insurance company's "red lining" practices). Numerous courts

have approved similar larger fees in class actions vindicating civil rights. *See also* Stipulation ¶

42, *Parsons v. Ryan*, No. 2:12-cv-00601 (D. Ariz. Oct. 14, 2014), ECF No. 1185 (stipulation

settling prison class action with fee of $4,900,000) (attached hereto as Exhibit 5); Declaration at

59, *Nunez v. City of N.Y.*, No. 1:11-cv-05845 (S.D.N.Y. July 1, 2015), ECF No. 209 (settlement

agreement in jail class action with agreed attorneys' fee of $6,500,000) (attached hereto as Exhibit

6); Stipulated Mot. for Prelim. Approval of Class Action Settlement at 9, *Hernandez v. Cnty. of

Monterey*, No. 5:13-cv-02354 (N.D. Cal. May 14, 2015), ECF No. 483 (settlement agreement in

jail class action with agreed attorneys' fee of $4,800,000) (attached hereto as Exhibit 7); *Craft v.

Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) (approving $6,375,000 fee);

*Wallace v. Powell*, 288 F.R.D. 347 (M.D. Pa. 2012) (approving $4,335,000 fee); *Bynum v. District

of Columbia*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (approving $4,000,000 fee); *In re Nassau

Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 502 (E.D.N.Y. 2014) (approving $4,018,030.25

fee); *Young v. Cnty. of Cook*, No. 06 C 552, 2017 WL 4164238, at *5 (N.D. Ill. Sept. 20, 2017) (approving $10,000,000 fee).[4]

      xiii)    <u>The "Value" of the Injunctive Relief</u>.

The fee is also reasonable given the monetary value of the benefits afforded to the class. Of course, it is impossible to reduce the value of improved health to a dollar amount. But the dollar cost of DAA medications can be calculated, and justifies the amount of the attorneys' fee. In pure dollar amounts, a course of DAA treatments over the last three state fiscal years has cost the State of Texas between $14,000 and $43,283.[5] The 2020 Exceptional Item Request from HHSC that was approved as part of the current biennium estimates the cost-per-treatment at approximately $16,500.[6] Thus, treating the 6,656 Medicaid patients in Texas – which the settlement enables – has an economic value of more than $115 million.[7] Here, the Texas legislature expressly designated these funds as part of its budget to allocate for DAA treatment. The fee is a small fraction of this amount. If this were a damage award and part of a common fund, the fee would be eminently reasonable. *See Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992) (approving award of 27.5% of $19,200,000 common fund as attorneys' fee).

---

[4] *See also* David Chen, *$8 Million Offered to End Attica Inmates' Suit*, NEW YORK TIMES (Jan. 5, 2000) (describing class action settlement including $4,000,000 attorneys' fee), http://www.nytimes.com/2000/01/05/nyregion/8-million-offered-to-end-attica-inmates-suit.html.

[5] Texas Health and Human Services Commission ("HHSC"), Feasibility and Cost-Effectiveness of Cross-Agency Bulk Purchasing for Direct Acting Antiviral Medications for Hepatitis C 38 (2020), https://www.hhs.texas.gov/reports/2021/01/feasibility-cost-effectiveness-cross-agency-bulk-purchasing-direct-acting-antivirals-hepatitis-c.

[6] Texas HHSC, Exceptional Item Request Schedule, Number 4A at 9 (Oct. 26, 2020) (requesting an all-fund appropriation of $115,756,479 and stating "[t]his EI estimates that in the biennium, 6,656 of the Medicaid and CHIP population and 280 state hospital residents would be treated with the modified policies").

[7] Id.

xiv)    <u>Costs and Litigation Expenses</u>.

The agreed amount for costs and fees is further justified by Plaintiffs' costs and litigation expenses, which they incurred in conjunction with the claims on which they successfully settled, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205. *See also Jones v. White*, No. H-03-2286, 2007 WL 2427976, at *8 (S.D. Tex. Aug. 22, 2007) (awarding experts' fees as litigation costs under the ADA). Plaintiffs' counsel paid these expenses with no contribution from the clients.

A detailed breakdown of the costs is included in Exhibit 1 attached hereto, totaling $7,278.94. *See also* Ex. 3, Edwards Decl. ¶ 74–79.

3.      *Attorneys' Fees and Expenses Summary.*

The total amount of the lodestar attorneys' fees and expenses for just Edwards Law and CHLPI is well over $650,000 at the market rate as of the date this motion was filed, far in excess of the $500,000 agreed to by Plaintiffs and Defendants. Absent Latham & Watkins' decision to work on a pro bono basis, the fees would be significantly higher. Defendants do not contest that these fees and expenses were directly and reasonably incurred in litigating the alleged violation of Plaintiffs' federal rights, the amount of the fees and expenses agreed to are proportionately related to the relief required for the alleged violation, and the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. *See* 42 U.S.C. § 1997e(d).

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and find that $500,000 in fees and expenses is fair and reasonable in light of the extraordinary result obtained by the Plaintiffs.

Dated:  November 15, 2021

Respectfully submitted,
EDWARDS LAW

By /s/ Jeff Edwards
JEFFREY S. EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
MICHAEL SINGLEY
State Bar No. 00794642
mike@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com
EDWARDS LAW
603 W 17th St.
Austin, TX 78702
Tel. (512) 623-7727
Fax. (512) 623-7729

KEVIN COSTELLO (pro hac vice)
Center for Health Law & Policy Innovation
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
Tel. (617) 496-0901

DAVID C. TOLLEY (pro hac vice)
david.tolley@lw.com
AMANDA BARNETT (pro hac vice)
amanda.barnett@lw.com
AVERY E. BORRELIZ (pro hac vice)
avery.borreliz@lw.com
ALLISON CARBONARO (pro hac vice)
allison.carbonaro@lw.com
LATHAM & WATKINS LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
Tel. (617) 880-4610
Fax: (617) 948-6001

*Counsel for Plaintiffs*

14

## **CERTIFICATE OF SERVICE**

    I hereby certify that on November 15, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

                                          /s/ Jeff Edwards
                                          Jeff Edwards

## **CERTIFICATE OF CONFERENCE**

    I certify that I have conferred with Defendants' counsel and they are in agreement that consistent with the settlement agreement, $500,000 in fees and expenses is fair and reasonable.

                                          /s/ Jeff Edwards
                                          Jeff Edwards